Campbell, J.:
Hedley, the complainant, on the 28th, day of April, 186V, received a settler’s license from the commissioner of the state land office for the northeast quarter of the southeast quarter of section five, in town seventeen north, of range eleven east, in Huron county, under section one of “An act to provide for the settlement and drainage of the swamp lands by actual settlers,” approved February 15, 1859, being section 8978 of the Compiled Laws. On the 13th day of June, 18V3, he received a patent from the proper state authorities under that license and in evidence of his fulfillment of its conditions.
He files his bill in this cause to remove a cloud on his title created by a patent issued on the 5th day of October, 18V2, to defendant Leonard, who mortgaged the land to defendant Richards, and conveyed it to defendant Gregory, who finally conveyed it to defendant Patterson. This patent, and the conveyances under it, he charges as having been fraudulently and illegally obtained, with notice and in violation of his rights.
The view we take of the case renders it unnecessary to consider all the issues of fact spread out in the testimony.
The issue of the .license and its subsequent confirmation by patent preclude any inquiry into the facts of settlement and occupancy except by some one who has obtained a right *under the statutes to question them. Unless the state brings proceedings to avoid its patent it must be presumed valid except as against such parties as are distinctly authorized to assail it. But it is claimed the earlier patent is entitled to the same presumptions. This is undoubtedly true, but its validity depends upon the jurisdiction of the authori‘ties to issue it, and if issued in a case beyond their jurisdiction it is void. And it was beyond that jurisdiction, if the land, when it was issued, had been reserved from sale by a reservation which was still in force. The patent to Leonard was for an ordinary sale of lands in the market. ‘
*71 The statute under which the license was issued to Hedley provided that it might be vacated in certain specified cases. One was a failure to file certain proofs of settlement, which in this case were seasonably filed. A second was upon certain proofs of waste, 'which it is not claimed were made in this case. A third, which is the one here relied on, was the following, Sec. §990 G. JO.: “Any person, etc., who shall abandon and not reside upon the lands described in his license for two years, shall forfeit his license; and ujion the filing with said commissioner the affidavit of the supervisor, or two responsible citizens of the township in which said lands are situated, that any licensee has abandoned said land, and has not resided upon the same for two years last past, said commissioner shall declare said license void, and may sell the said swamp lands the same as other swamp lands are sold, provided that no such licensee shall be deemed to have abandoned his land by reason of being engaged in the military or naval service of the United States.”
On the 30th day of September, 1872, Arthur B. Wood and John Howarth made an affidavit concerning Hedley’s lands, the only allegations pertinent to the inquiry being in the following language: “That John Hedley, who obtained license No. 4965 for said lands, has abandoned the same, and has not resided thereon for two years last past, and that he is not now, and has not for the last two years, been engaged in the military or naval service of the United States.” *Upon this affidavit and a supervisor’s certificate that Wood and Howarth were responsible citizens of the township, a sale was made to Leonard as of lands in the market.
The record does not show, either in averment or proofs, that the commissioner of the land office ever made any declaration avoiding-the license to Hedley. This, under the statute, was a condition precedent to a sale to any one else. It was never the intention of the law that such an avoidance should rest in inference. The sale to Leonard is in the same form precisely with sales of land never held under license, and is, without such an avoidance, plainly illegal, as a sale, of lands which *72 appeared by the office records to have been already reserved from sale.
We also think that if the commissioner was authorized under this act to avoid the license on ex parte affidavits, upon which we express no opinion, it was at least incumbent on him to exercise his own judgment on the facts in question. For the purposes of this forfeiture the statute requires two distinct causes, both of which must coincide, namely: non-residence and abandonment. Where both of these exist the land is deserted and vacant, and all persons could probably see it. What facts constitute non-residence, and what abandonment, may not strike all persons alike, and the judgment which is to be exercised is that of the commissioner, and not that of witnesses. He must use his own judgment in determining whether the facts laid before him do or do not show a complete and undoubted abandonment, and a very clear case must exist to render any forfeiture justifiable. He is bound to know that the witnesses are responsible citizens, which means much more than mere residents concerning whose character he knows nothing, and the requirement of this knowledge is not formal. In this case the supervisor, within a week after he had certified without oath to the character of the affiants, declared with equal positiveness that their affidavit, to which he had appended his first certificate, was a willful and corrupt falsehood, and yet it covered facts which the statute assumes every supervisor must be informed upon.
'^Assuming that action may be had ex parte, it neces- “ sarily follows that it cannot be conclusive against actual facts to the contrary of those acted on. A licensee cannot be deprived of his rights. It is only when he has given them up that the commissioner can intervene. Nothing but complete and utter abandonment authorizes a license to be vacated under the statute. Those who proceed without notice and on mere affidavits can get no rights against the real facts, and cannot be allowed te prevail against those who are not in fault. The statute is not very clear concerning the method of proceeding. The commissioner is bound in justice to see to it that the licensee .has an opportunity of being heard unless it is
. *73 impracticable by reason of his absence and the desertion of the land, and should take no step until he has made full efforts to reach the party. It is the express policy of the state to encourage the improvement of swamp lands by such licensees, and it is a perversion of that policy to encourage interlopers to enjoy the fruit of other men’s labors. It never was designed that any one should be ousted unless he has manifestly failed to perform his obligations and determined to abandon his holding. There are other means of ending a broken contract than its avoidance by the declaration of the commissioner, in which the licensee would have a legal trial of the facts. It is only where he leaves the premises and shows thereby a clear purpose to make no further claim, that the summary proceeding is to be had.. In such case there is no likelihood of future disputes.
In the present case the evidence is very clear that Hedley made important improvements by clearing and draining, and kept up his occupation for that purpose. There is nothing tending to show abandonment. The only dispute is concerning residence. But non-residence is a very different thing from abandonment, and will not authorize the summary interference of the commissioner under the statute. If a case of forfeiture it must be enforced otherwise.
We do not, however, regard the evidence as maintaining *'non-residence. The land in controversy is held by a single man, living with his father on an adjoining parcel which is used and partially enclosed with the tract in controversy. The licensee resides there for the purpose of cultivating this land, and we think the statute is not violated merely because the house is off the land. The obvious purpose of the law is to secure clearing and drainage, and we can see no good reason for a strained interpretation which is called for by no grievance. A person is ordinarily held to reside on all the parcels of land which are actually appurtenant to his house, and it is only when lying in different municipalities that it becomes necessary to divide theoretically a holding which is practically single. An unmarried man who who lives v'ith his father in such close proximity to his own *74 farm may be fairly said to reside on his own farm, if such occupation is honestly designed as home occupation. Technical considerations should not be allowed to defeat what is a substantial compliance with the benevolent purposes of the statute.
The possession was open and no one could visit the land without seeing it. The idea that any of these defendants acted without means of knowledge is unfounded. Their conduct was fraudulent throughout.
The complainant is entitled to a decree requiring the defendants to release their claims, and to costs of both courts. The decree below must be reversed, and a decree entered accordingly, and the case remanded for its enforcement. ',
The other justices concurred.