ALEXANDER P. WAIT v. THE COMMISSIONER OF THE STATE LAND-OFFICE.

*Swamp lands—Scrip—Homestead entry—Abandonment.*

1. The term "scrip," as used in the statutes governing the disposition of "State Swamp Lands," so called, means the credit to contractors upon the books in the State Land-office of the number of acres of land, not particularly designated because not selected, to which they are entitled by reason of the acceptance of a portion or the whole of their contracts for the construction of roads or ditches, which scrip, though not otherwise evidenced, has been considered and treated as assignable.

2. It was not the intention of the Legislature to permit the holders of swamp-land scrip to enter or select for entry lands which had been occupied by an actual settler under a license issued by the Commissioner of the State Land-office under the provisions of Act No. 229, Laws of 1859 (How. Stat. §§ 5436–5441), and which had been forfeited and abandoned.

*Mandamus.* Submitted June 29, 1891. Denied July 28, 1891.

Relator applied for *mandamus* to compel respondent to issue a patent to him for 80 acres of swamp land. The facts are stated in the opinion.

87 MICH.—23.

*C. H. Rose* and *Frank E. Robson* (*Isaac Marston*, of counsel), for relator.

*A. A. Ellis*, Attorney General, for respondent.

CHAMPLIN, C. J. ·The relator filed his petition in this Court praying for a *mandamus* to compel the Commissioner of the State Land-office to issue to him a patent for the S. ½ of the N. W. ¼ of section 24, town 38 N., range 3 W., situated in Cheboygan county, Mich.; said land being a portion of the land granted to the State of Michigan under the act of Congress approved September 28, 1850, popularly known as the "Swamp-Land Grant." This particular parcel of land was patented to the State by virtue of said act on October 4, 1875.

He alleges that the said parcel has not been purchased from the State, and was on the 18th day of November, 1890, and thence hitherto, the property of the State of Michigan; that by Act No. 130, Laws of 1883, the State of Michigan appropriated to the county of Livingston 10,000 acres of swamp lands in the Lower Peninsula, not otherwise appropriated, for the purpose of aiding in straightening the channel of Cedar river, and opening, widening, and deepening the same; that, acting under said act, the county contracted with one Edward W. Sparrow to perform said work, and, upon his fulfilling his part of the contract, said county, in consideration thereof, sold, assigned, transferred, and set over all its claims and rights to said 10,000 acres of land to said Sparrow, and he accepted the same; that upon November 17, 1890, Sparrow sold, assigned, and set over to the relator the right to select and receive 80 acres of said land by a written instrument, in words and figures as follows:

"For a valuable consideration, to me in hand paid, I

hereby sell, assign, and set over to Alexander P. Wait, of Osceola county, Michigan, the right to select, under provisions of Act No. 130, Laws of 1883, eighty acres of State swamp land, not otherwise appropriated.

"EDWARD W. SPARROW.

"Dated Lansing, Michigan, November 17, 1890."

That upon the 18th day of November, 1890, the relator, in pursuance of said assignment, and complying in all respects with the provisions of law governing such applications, did select said above-described parcel, and request Roscoe D. Dix, State Land Commissioner, to issue to him a patent therefor under Act No. 130, Laws of 1883; but said State Land Commissioner did, without legal excuse, upon the 22d day of November, 1890, absolutely refuse to issue to the relator any patent therefor; and he prays that a peremptory writ of *mandamus* may issue out of and under the seal of this Court, commanding the said Roscoe D. Dix, State Land Commissioner as aforesaid, to issue forthwith to relator a patent for said above-described lands.

The Commissioner of the State Land-office filed his answer to said petition, admitting the several allegations in the petition, down to and including the request for the issue of a patent, and his refusal to do so; but denies that his refusal was without any legal excuse, and says, in that behalf,—

"That said tract of land was offered for sale at public vendue at the office of the Commissioner of the State Land-office on the 1st day of November, 1876, under the provisions of Act No. 97 of the Laws of 1869, the same being Howell's Statutes, sections 5444 to 5446, inclusive, as set forth in the petition of said petitioner, and hereinbefore admitted; and respondent, further answering, says that on the 24th day of October, 1878, said lot was licensed to Alexander Gero as a homestead under Act No. 229 of the Laws of 1859 and amendments thereto, the same being Howell's Statutes, sections 5436 to 5441, inclusive; and respondent, further answering in that behalf,

says that the title to the said lands revested in the State of Michigan on the 24th day of October, 1890, for the reason that Gero had wholly abandoned said lands as a homestead for the space of two years; and respondent, further answering, says, that since the withdrawal of said lands for the benefit of said Gero, and since the reversion of said lands to the State of Michigan, as above set forth, the land has not been restored to the market, as provided by Act No. 21 of the Laws of 1873, the same being Howell's Statutes, sections 5249 to 5253, inclusive; and that because said lands have not been restored to market, as provided by said act, they were not subject to private entry or purchase by the said petitioner, or any other person; and that, therefore, the *mandamus* prayed in said petition ought not to issue."

Upon the hearing before us, other objections than these set up in the answer were urged as reasons why the relator is not entitled to the patent, based upon the language of Act No. 130, and upon existing laws with reference to the disposition of swamp lands. We do not consider these objections tenable, and shall confine our views to those set out in the answer.

Before proceeding to the discussion, it is proper that we should define what is meant and understood by the term "scrip." This term has been used in the statute respecting the disposition of swamp lands, but no legal definition or signification has been expressed in the statute. It has been the practice in the land-office of this State, where lands have been appropriated or granted for the purpose of aiding in the drainage of swamp lands, whenever the contractor doing the work has so performed any portion of it as to obtain its acceptance by the proper officer, and that officer has reported to the land-office, to credit the contractor upon the books of the office with the number of acres of swamp land to which such performance entitles him under the contract, and this credit is what is termed "scrip," although no certificate or other written evidence of the right of the

party is issued. The lands, not having yet been selected, cannot be described or identified, and, until such selection is made, this credit, called "scrip," has been considered as assignable, in whole or in part, to other parties, and they have made selections, and; when so made and entered, the lands so selected are charged to the contractor upon the books of the office.

The sections of the statute referred to in the answer of the Commissioner read as follows:

"SEC. 5249. *The People of the State of Michigan enact*, That all lands of this State, which have been withdrawn from market for any purpose, or withheld from sale or pre-emption, in consequence of errors in books, or in consequence of marking sales or reservations upon maps, and·all lands which have reverted, or may hereafter revert, to the State, by reason of a failure in any manner to make payment for the same, or by a failure to comply with the terms of any State road, railroad, or other grant or contract of this State, to or with any person or corporation, or by reason of a failure to comply with the conditions of any license or homestead act; shall not be subject to private entry or purchase, either with cash or scrip, until public notice of the restoration of such lands to market shall have been given in the manner hereinafter prescribed.

"SEC. 5250. The Commissioner of the State Land-office shall be required to advertise for four successive weeks, in a newspaper published in the county where such lands are situate, if there is one published therein, and, if not, then in some newspaper published in a county nearest to that in which said lands are located, and shall also forward a written or printed notice by letter, mailed and properly directed to each settler and purchaser of lands held by him under any of the laws of the State, and included in the list so advertised, that at a time certain, at his office in the city of Lansing, naming the day of the month and the hour, not less than thirty days from the date of the first insertion of such advertisement, the particular lands, giving the descriptions thereon, will be restored to market.

"SEC. 5251. It shall be the duty of the Commissioner to cause the notice of the restoration of such lands to

market to be publicly proclaimed from the front door of the land-office in Lansing, one hour before the time of such restoration; and, in all cases where there are two or more applicants for the same tract of land present at the time of its restoration to market, the Commissioner shall immediately offer and sell the said tract in the smallest subdivisions of which the same is susceptible, not less than forty acres (unless the tract should be a fractional section or fractional part of a section containing a less number of acres), to the highest bidder: *Provided*, no bid for any such tract shall be received by the Commissioner unless- the price offered shall be equal to the minimum price of such land as fixed by law.

"SEC. 5252. All entries or sales of any lands such as are hereinbefore referred to, or of lands now held in trust by the State which may hereafter become the property of the State by virtue of any of the provisions of such trust, if such entries or sales be permitted or made in violation of any of the provisions of this act, shall be absolutely void, and the certificate issued thereon shall vest no title in the person or corporation entering or purchasing the same.

"SEC. 5253. All acts or parts of acts contravening any of the provisions of this act are hereby repealed."

The lands licensed to Gero did not revert until the forfeiture had been declared, and this was not done until October 24, 1890, and on November 18, 1890, being 25 days after the forfeiture was declared, the relator attempted to select this land with scrip, under Act No. 130 of the Laws of 1883. He presented his selection and applied for a patent. He based his claim on the ground that the land was swamp land which belonged to the State, and was unappropriated, and consequently subject to selection, under Act No. 130.

The only question is whether Act No. 21, Laws of 1873, being sections 5249 to 5253 of Howell's Statutes, applies to the land in question, and to the scrip under which the selection is sought to be made. Alexander Gero was licensed by the Commissioner of the State Land-office to enter upon and occupy the land in ques-

tion as a settler or occupant under the provisions of Act No. 229, Laws of 1859, and the amendments thereto, being compiler's sections of Howell's Annotated Statutes, 5436 to 5440. The question of the forfeiture of such lands by the Commissioner, and the object of the statute in granting licenses to settlers upon swamp lands, is commented upon in *Hedley v. Leonard*, 35 Mich. 71, and it was there held that the lands did not revert to the State until the forfeiture had been declared. It was also held that such licensee had rights of which he could not be deprived except by proceeding in strict accordance with the statute; and it was said that—

"It is the express policy of the State to encourage the improvement of swamp lands by such licensees, and it is a perversion of that policy to encourage interlopers to enjoy the fruit of other men's labors. It never was designed that any one should be ousted unless he has manifestly failed to perform his obligations, and determined to abandon his holding."

It was in furtherance of this policy of the State that the act of 1873 was passed, in which it is expressly declared that—

"All lands which have reverted, or may hereafter revert, to the State, by reason of a failure in any manner to make payment for the same, or by a failure to comply with the terms of any State road, railroad, or other grant or contract of this State, to or with any person or corporation, or by reason of a failure to comply with the conditions of any license or homestead act, shall not be subject to private entry or purchase, either with cash or scrip, until public notice of the restoration of such lands to market shall have been given in the manner hereinafter prescribed."

The next section prescribes the notice which shall be; given, and requires the commissioner to forward a, written or printed notice by letter, mailed and properly directed to each settler or purchaser of lands held by him under any of the laws of the State, giving notice of

the day, month, and hour when such lands shall be restored to market. We conceive that the object of this statute is to enable a person who has had the misfortune to fail to complete his purchase under a license, for any cause, to appear at the time and place of sale, and bid thereon. The statute expressly denies the right of private entry or purchase, either with cash or scrip. The relator was therefore prohibited from entering this particular parcel of land with scrip.

It is urged that Act No. 130 made no exceptions; that all that was required by that act was that it should be swamp lands in the Lower Peninsula not appropriated; and that it operated as an implied repeal of the act of 1873, above quoted. But I do not think so. I think these acts should be construed so as to be in harmony with each other, if possible, and I do not think it was the intention of the Legislature to permit persons having credit upon the books of the land-office to enter lands or select for entry lands which had been occupied by actual settlers, and which had been forfeited and abandoned. The whole spirit of the enactments for the protection of settlers and homesteaders would be violated by such construction. In this case Gero entered this land in 1878 as a homestead, and the record says that he had abandoned it for two years prior to 1890. For all that is known or disclosed, he may have made valuable improvements on this property. He is not a party before us, and the forfeiture itself, as to him, may not be effective. At any rate, as to such lands licensed to homesteaders, we think the statute of 1873 applies, prohibiting a private entry, either for cash or scrip.

We think the *mandamus* should be denied.

The other Justices concurred.