GUSTIN *v.* COMMISSIONER OF STATE LAND OFFICE.

PUBLIC LANDS—SWAMP LANDS—RESERVATION FROM SALE—RESALE
—RIGHT TO PURCHASE—MANDAMUS.

1 Comp. Laws 1897, §§ 1311, 1312, provide that State lands which have been withdrawn from the market shall not be subject to private entry or purchase until published notice of their restoration to the market shall have been given by the commissioner of the land office.  Section 1447 places the swamp lands under the supervision of such commissioner. Act No. 169, Pub. Acts 1897, required the board of control of State swamp lands to set aside 5,000 acres of swamp lands within 60 days after the taking effect of the act, for the purpose of improving a certain river.  Within such time the land commissioner withdrew certain swamp lands from the market, but the board of control did not pass a formal resolution to that effect, though they knew and approved of the action of the commissioner.  *Held,* that the failure of the board to pass such resolution would not authorize a sale of the lands to a private purchaser prior to their restoration to the market in the manner prescribed by the statute, and hence an application to purchase the same could not be enforced by *mandamus.*

*Mandamus* by Henry K. Gustin to compel William R. French, commissioner of the State land office, to issue a

certificate of purchase for certain swamp lands. Submitted January 29, 1901. Writ denied April 16, 1901.

*William R. Kendrick* and *Henry K. Gustin*, for relator.

*Horace M. Oren*, Attorney General, for respondent.

MOORE, J. The relator filed his petition for a writ of *mandamus* to compel the respondent to convey to him upwards of 1,000 acres of what is known as "State swamp land," for which he had tendered the respondent $1.25 an acre. The respondent has made answer to the petition. The material parts of the answer are as follows:

"That, as to the allegation contained in paragraph 4 of said petition, this respondent says that, by reason of the fact that said lands were not subject to private sale at the time of said relator's application therefor, he refused to issue to said relator a certificate of purchase in accordance with his said application; and this respondent denies that said relator was entitled to a certificate of purchase, which, upon presentation to the secretary of state, would entitle him to a patent for said lands.

"This respondent, further answering, and showing cause why he should not be compelled to accept the said application of relator, and to issue a certificate for the purchase of said lands pursuant thereto says that Act No. 169 of the Public Acts of 1897, being an act to provide for the appropriation of five thousand acres of State swamp land for the purpose of cleaning out Shiawassee river in the county of Saginaw, authorized and empowered the board of control of State swamp lands of this State to appropriate five thousand acres of State swamp lands in the Lower Peninsula for the purpose mentioned in the title of said act; that a meeting of the board of control of State swamp lands for the purpose of considering the provisions of said act was held on the 1st day of July, A. D. 1897, at which time this respondent was chairman of the board of control of State swamp lands in this State, and was authorized by said board to make an examination of said proposed improvement provided for by said act; that prior to the next meeting of said board of control, which was held on the 29th day of July, 1897, this respondent,

by virtue of the power and authority in him vested, as commissioner of the State land office, over the public lands of the State, reserved and withdrew from market, for the purpose of said Act No. 169, five thousand acres of State swamp land, of which the one thousand and forty acres described in relator's petition was a part, and authorized and directed the chief clerk of the land commissioner's office, who was also clerk of the board of control of State swamp lands in this State, to designate in writing upon the sales plats in the office of the commissioner of the State land office that said lands were reserved and withdrawn from market for the purposes of said Act No. 169, and that all of the lands described in relator's petition were so withdrawn from market and reserved for the purposes of said Act No. 169, together with other lands,— in all, five thousand acres,—all- of which was done with the knowledge and approval of the several members of said board.

"This respondent, further answering, says that at the meeting of the board of control of State swamp lands of this State held on the 29th day of July, 1897, the said chief clerk of the land commissioner's office, who was also clerk of said board of control, as directed by this respondent, reported to said board that the lands described in relator's petition, together with other lands, in all amounting to five thousand acres, had been withdrawn from market and reserved pending further action of said board relative to the provisions of said Act No. 169; that a copy of the official record of the minutes of the several meetings of said board of control relative to the provisions of said Act No. 169 is attached to and made a part of this answer, and marked 'Exhibit A.'

"This respondent, further answering, says that, under and by virtue of the power and authority in him vested by the laws of this State with respect to the public lands of this State, the lands described in relator's petition were by him withdrawn from market, and that said lands, by virtue of such withdrawal, were not subject to private sale until again restored to market in accordance with the requirements and provisions of Act No. 21 of the Public Acts of 1873, being sections 1311 and 1314, inclusive, of the Compiled Laws of 1897.

"This respondent, further answering, says that said lands were actually withdrawn from market by this respondent, which fact was recorded upon the sales plats

of the office of the commissioner of the State land office, and have been so treated and held in reserve for a period of over three years, during which period the value of said lands has greatly increased, and that they are now worth in the open market much more than one dollar and twenty-five cents per acre; that many applications have been made to purchase said lands prior to the said application of relator during the time they were so withheld from market, and therefore they should only be restored to market in accordance with the provisions of the statute expressly relating thereto; that to restore said lands to market at private sale at one dollar and twenty-five cents per acre would result in great loss to the people of the State of Michigan."

The exhibits attached to the answer show that at a meeting of the board of control of State swamp lands held July 1, 1897, among other things the following appears upon the minutes:

"Senate bill No. 370, authorizing the appropriation of 5,000 acres of State swamp land for the improvement of the Shiawassee river in Saginaw county, was read by the secretary. Hon. B. Colvin, Judge Wilber, and Geo. B. Brooks, being present, exhibited a map of the territory obstructed, and explained the situation."

The minutes of a meeting held July 29th contain the following:

"Commissioner French reported that he had attempted to examine the territory of the proposed improvements of the Shiawassee river, and visited Saginaw on July 7th for that purpose, but that, on account of the extreme hot weather prevailing at that time, postponed the examination until some more favorable time in the future, and expressed the opinion that, unless the general government made certain proposed improvements below where the State improvement was proposed, it would be useless to carry out the provisions of the act authorizing such improvement. * * * The secretary reported that a list of lands selected for the payment of the Shiawassee-river improvement had been submitted, and the lands reserved pending further action by the board."

At a meeting of the board held October 12, 1898, the following appeared:

"Commissioner French made report of his examination of the territory to be affected by the proposed improvement of Shiawassee river, as follows:

"'Examined river from vicinity of St. Charles downstream, and found it filled with driftwood, which in high water so obstructs the flow of water as to cause the stream to overflow its banks and cover a large territory of good land with water, to its great detriment. This could be overcome by removing the driftwood from the channel, thereby greatly benefiting the section now annually overflowed.'

"Commissioner French recommended the appropriation as authorized. Mr. Steel moved that the appropriation of 5,000 acres of swamp land authorized by the act be made. Mr. Gardner seconded this motion, which then prevailed. Moved by Mr. Steel, seconded by Mr. Maynard, that the details necessary to carry the intent of the act into effect be placed in the hands of the chairman of the board, which motion prevailed."

At a meeting held September 26, 1900, the board voted to discontinue any further action under Act No. 169. This action brought out a petition from residents of the Saginaw valley, and another meeting of the board was held November 28, 1900, and a hearing was given to the parties interested, and the action of the board taken September 26th was reconsidered.

It is now claimed that, because the records of the board of control do not show a formal resolution to appropriate these lands within 60 days after Act 169 was given effect, there has been no legal withdrawal, and the relator is entitled, as a matter of right, to buy these lands.

The statutes do not provide just what formal action shall be taken by the board of control in order to appropriate the lands and withdraw them from the market. We take it, there can be no question but the legislature has the right to withdraw the swamp lands from sale at any time. When we seek to construe the statutes in relation to the swamp lands, we should not consider them separately, but treat them as all bearing upon one subject, and as constituting one system, and each law as explanatory of the others. *People v. Pritchard,* 17 Mich. 260.

126 MICH.—18.

Nor, where it is apparent from the record that the officials having control of public lands have attempted to take action authorized under a given act of the legislature, should we be unduly technical in looking for irregularities which will defeat the purpose of the law, and result in giving to private parties a large tract of land belonging to the State for one-third its value.

Section 1290, 1 Comp. Laws 1897, gives the commissioner of the land office general charge and supervision of all the lands belonging to the State. Section 1447, 1 Comp. Laws 1897, places the swamp lands under his supervision. Other sections of the statute impose upon the board of control of swamp lands, of which board the land commissioner is chairman, certain duties, and confer upon them certain powers, in relation to which it is not necessary to speak in detail.

Act No. 169, Pub. Acts 1897, reads as follows:

"An act to provide for the appropriation of five thousand acres of State swamp land for the purpose of cleaning out Shiawassee river in the county of Saginaw.

"SECTION 1. *The People of the State of Michigan enact*, that the board of control of State swamp lands of this State be and they are hereby authorized and empowered, and it shall be their duty, within sixty days after the taking effect of this act, to appropriate five thousand acres of State swamp lands in the Lower Peninsula, vacant and not appropriated to any specific purpose, for the purpose of cleaning out the channel of Shiawassee river in Saginaw county, where necessary to aid in draining and reclaiming swamp and overflowed lands adjacent thereto. Said lands, when thus appropriated, shall be selected within sixty days after this act takes effect, and no swamp land script shall issue therefor, and shall be taken out of the market for the purposes of this act, and shall not be used except in carrying out the purpose above specified: *Provided*, that such work shall be done and the expenditure of such appropriation be made in pursuance of the provisions of law now in force relative to the construction of State roads and ditches, under the supervision and control of the commissioner of the State land office and the board of control of State swamp lands."

A portion of section 1466, 1 Comp. Laws 1897, reads as follows:

"The governor, secretary of State, auditor general, State treasurer, attorney general, and commissioner of the State land office shall constitute a board of control, and shall have power, and it shall be their duty, whenever in their judgment the public interest shall require it, to suspend the surveys or operations on any of said roads, or those of any roads to be hereafter constructed under the provisions of this act, and to direct resurveys, with a view to the selection of more fit and convenient localities for the road, and to direct, from time to time, what work shall be commenced, suspended, or discontinued, and to extend the time for completing the work of any contract, and to correct all errors in contracts."

Prior to July 29, 1897, the chief clerk of the land office, acting in accordance with the instructions of the commissioner of the State land office, and pursuant to his determination to withdraw from market and reserve the lands from sale, indicated such withdrawal and reservation upon the sales plats of said State swamp lands in the office of the commissioner of the State land office, by marking in lead pencil the letters "S. R." on each tract so selected, as he was directed by the commissioner of the State land office so to do. The letters "S. R." were placed upon the sales plats in the office of the commissioner of the State land office for the express purpose of showing on said plats that the lands had been withdrawn from the market by the commissioner, and reserved for cleaning out Shiawassee river, under and in accordance with the provisions of said Act No. 169. The fact that these lands were withdrawn was reported to the board at its first meeting after they were withdrawn. Their conduct then and subsequently shows very clearly that they had knowledge of what was done, and approved of it, and supposed the action of the land commissioner, the chief clerk, and themselves had resulted in withdrawing these lands from the market. They were in fact withdrawn from market. Persons who sought to buy them were not permitted to do

so. In the meantime they have increased in value so they are worth several times what they were when withdrawn. It was made the duty of the board of control to appropriate these lands. They undertook to do so, and supposed they had appropriated them. Their action resulted in the lands being, as a matter of fact, withdrawn from market.

To provide for like contingencies as this, section 1311, 1 Comp. Laws 1897, was passed. See *Wait* v. *Commissioner of State Land Office*, 87 Mich. 353 (49 N. W. 600). Before these lands can again be put upon the market, they must be offered at public sale to the highest bidder, so that the State, and not private parties, may profit by the increase in value while they have been withdrawn from market.

A brief has been filed upon the part of persons interested in the improvement; but we do not deem it best to pass upon any other question than the right of the relator 'to have a deed issued to him.

The application for a writ of *mandamus* is denied.

The other Justices concurred.