Conn, J.
 

 The issue, having been framed in the common pleas by suitable pleadings, was referred both as to the facts and the law to a referee, who heard same and filed his report in the common pleas. There were filed exceptions to the report, motion for new trial, and, subsequently, a motion to confirm the report, all of which seasonably were disposed of. The common pleas approved the report, and entered a decree accordingly. On appeal, a similar decree was the order of the Court of Appeals.
 

 The report of the referee sets forth the physical situation of the districts as they formerly were, their contiguity, the fact that on February 9, 1924, the county board of education of Cuyahoga county passed a resolution creating a new school district from “all of the Lyndhurst Village school district, and all of the South Euclid school district, under the name of ‘South Euclid Village School District,’ ” that, subsequently to the above narrated action of the board, and within the period of 30 days, a remonstrance was filed by 811 electors of the districts as formerly constituted, such number
 
 *639
 
 being less than a majority of tbe total number of the qualified electors residing in the territory affected.
 

 The referee found the resolution of the county board to be a valid resolution, fully authorized by the Constitution and laws of Ohio; that the action of the county board violated no lawful discretion: and, finally, that the new school district had been properly created.
 

 Plaintiff in error contends that the board in creating the district in question proceeded under Section 4736, General Code, whereas it should have proceeded under Section 4692, General Code. The former has to do with the creation of school districts, while the latter has to do with the transfer of territory from one school district to another.
 

 Perhaps the board could well have acted under Section 4692, General Code, since under it the transfer of an entire district may be effected, or only a portion of a district be transferred to an adjoining district. But Section 4736 was sufficiently authoritative for the board to proceed as it did. If it be said that it is not the policy of the law to furnish two remedies for a given necessity, it is sufficient to say that as it now stands Section 4786, General Code, was enacted subsequently to Section 4692, General Code, and if there be any question, Section 4736 is entitled to precedence.
 

 Plaintiff in error says the effect of proceeding under the later enacted section deprives a majority of the qualified electors residing in one of the districts, as formerly constituted, from remonstrating successfully. This may have been the very purpose the General Assembly had in mind
 
 *640
 
 in passing the later section. For some reason satisfactory to that body, it now requires that the matter shall be put before the electors of the entire territory thereafter to be affected. The power to arrange school districts necessarily must be given to some agency, and the General Assembly under Section 3, Article VI, of the Constitution, has delegated that duty to the county board of education.
 

 It must be conceded that because of its acquaintance with local conditions the county board presumably is qualified to speak on matters of district formation, and also presumably full consideration is given by a board so engaged to all the facts and circumstances pertinent to the inquiry. The general policy of our governmental scheme is that the majority shall rule. This does not mean a majority of part of the people affected, but a majority of all of the people affected. The General Assembly having given the electors the power by referendum to review the action of the county board as regards the territorial limitation of districts, it cannot be denied this is a reference in fact, as well as in name. The act now permits all the people of the territory affected to give expression to their wish, whereas a reference of the question to the voters of part of the newly-created district would deprive of voice those not allowed to participate; indeed, such a reference not only might deprive the greater number of an opportunity to express themselves in the matter, but also those paying the major portion of the taxes.
 

 The action of the county board is further challenged, in that it is averred the board proceeded
 
 *641
 
 arbitrarily, whimsically, and unreasonably. The presumption is otherwise.
 
 Not
 
 only this, but the referee, the common pleas, and the Court of Appeals, in succession, affirmatively found otherwise. The question having been disposed of by these several agencies, it would seem unnecessary for this court to turn its attention to that claim, but a careful examination of the record discloses that the maintenance of the Lyndhurst school district is not warranted either from an economical or an educational standpoint; at present it has no adequate high school, and a large number of Lyndhurst children of school age have been attending the South Euclid High School. The merger of the two districts will have the effect of furnishing a better school service, and the implication that the taxpayers of the Lyndhurst district are not paying their share will no longer exist. We hold there was no exercise of arbitrary power.
 

 With reference to the suggestion of the exercise by the board of its power arbitrarily, the following observations from the pen of Judge Matthias in the case of
 
 State ex rel. Maxwell
 
 v. Schneider, 103 Ohio St., 492, 134 N. E., 443, are pertinent:
 

 “The action of a public officer, or of a board, within the limits of the jurisdiction conferred by law, is not only presumed to be valid, but it is also presumed to be in good faith and in the exercise of sound judgment. Before a court will take cognizance of a claim that the action of such officer or board is unlawful, arbitrary, unreasonable, or of such character as to constitute an abuse of discretion, facts must be set forth which would
 
 *642
 
 warrant such conclusion. In the answer, some facts with reference to distance, condition of roads, etc., are averred, but no facts are alleged which, if admitted to be true, would warrant the court in substituting its judgment for that of the county board of education in a matter as to which the statute has conferred upon that board authority so full and complete. Facts showing fraud, collusion, or such abuse of discretion as would call for the restraining action of the court, are not presented. ’ ’
 

 See, also,
 
 State ex rel. Atty. Gen.
 
 v.
 
 Ironton Gas Co.,
 
 37 Ohio St., 45;
 
 Brannon
 
 v.
 
 Board of Education of Tiro Consolidated School District of Crawford County,
 
 99 Ohio St., 369, 124 N. E., 235; and
 
 County Board of Education of Hancock County
 
 v.
 
 Boehm,
 
 102 Ohio St., 292, 131 N. E., 812.
 

 The petition of plaintiff in the instaut case is subject to that very criticism.
 

 Plaintiff in error attacks the constitutionality of the section in question, claiming it does not have a uniform operation throughout the state, which, of course, it must have, in view of the fact tha.t laws relating to the public schools are of a general nature.
 

 It is urged that this statute does not make for uniformity because there have been withdrawn from the statute the requirements that the county board, in the arrangement of school districts, shall have regard to topography, population, and property valuation, thus leaving no restrictive features, from which it results that the county board of each county is a law unto itself. The statute some years ago dealt with the question of topography
 
 *643
 
 and population, but at that time our roads and methods of travel were quite different from those of the present day. Good roads and automobiles have made it possible and feasible to have larger, districts. School children are now conveyed to and from school not only by privately owned automobiles but also by motor busses furnished by the school authorities in accordance with law. The school statutes ever have been the result of development, and experience has taught Legislatures and boards of education to realize what is well understood in other activities of life, to-wit, that results depend to some extent upon facilities. The larger and wealthier the school district, obviously the better the curriculum.
 

 If in a few counties some of the townships have less than their quota of modem roads, because of which the pupils cannot travel far from home, this does not thereby control all districts throughout the commonwealth. If it did, the unimproved sections would control the improved ones, and the size of the smallest district would be adopted as the uniform standard. Thereafter, districts would grow only as does the most stagnant one in respect of population and valuation. Moreover, if districts are to be enlarged in accordance with increases in population and valuation, by the same token the drift from the farm, if such be the fact, and if it be continued, will require the more populous districts from time to time to be reduced in size. Again, if plaintiff in error’s contention as to the topography feature were to control, it would be interesting to know how the county boards of education of some of the
 
 *644
 
 hilly counties of southeastern Ohio, and those of the comparatively level counties of northwestern Ohio, would reconcile their divergent ideas.
 

 A law of general nature is of uniform operation if in full force in every part of the state. It is not necessarily invoked universally, or even often. For instance, boards of county commissioners occasionally create road districts, which are seldom of equal size, and not always are the roads constructed in the same manner when improved. The test is met if the law operates equally upon every person and locality within the circumstances covered by the act. It has been said by this court that if a required classification has a reasonable basis it is not invalid because not made with exactness, or because in practice it may result in some inequality.
 
 Porter et al., Trustees,
 
 v.
 
 Hopkins, Treas.,
 
 91 Ohio St., 74, 109 N. E., 629.
 

 . With reference to the claim that the due process clause has been violated, in addition to what heretofore has been said about the general terms used in the petition of plaintiff, and the omission to plead specific facts justifying the claim, it may be observed that a taxpayer has no vested right to a given tax rate.
 

 Again' referring to the case of
 
 State ex rel.
 
 v.
 
 Schneider, supra,
 
 the third syllabus is as follows :
 

 “The absence from the provisions of the statute relative to the creation of new school districts by the county board of education of a requirement that notice be given of action pursuant to such provisions does not invalidate the law. 'Section 4736, General Code, contravenes no provision of the Constitution; state or federal.”
 

 
 *645
 
 The very reference of counsel for plaintiff in error to the
 
 Dartmouth College case,
 
 is a tacit admission that due process does not necessarily mean judicial proceeding.
 

 The arranging of districts is an administrative matter. The property owner pays taxes for the schools of his district, not because of what the board may do as regards territorial boundaries, but because of a direct requirement of the Constitution. The referendum to a majority of all the people affected is sufficient to protect as against-any rights that are encroached upon. The judgment should be and is affirmed.
 

 Judgment affirmed.
 

 M ARSTTATiTj, C. J., RiOBINSON, JONES, MATTHIAS, Day, and Axjuen, JJ., concur.