HEATON ET AL. *v.* JACKSON ET AL.

(Decided March 10, 1930.)

*Mr. Burch B. Ferenbaugh* and *Mr. R. H. Hunter,* for plaintiffs.
*Mr. Jay S. McDevitt,* for defendants.

SHERICK, J.  This action is an appeal from the court of common pleas of Knox county.  The appellants, W. D. Heaton and others, seek to restrain the county board of education from further proceeding in its action in transferring about 800 acres of territory from the Union township school district to the Brink Haven village school district, and to enjoin the county auditor from making the necessary tax changes and collections pursuant to such transfer.

Six of the plaintiffs bring this action as residents and taxpayers of the territory sought to be transferred; the remaining plaintiffs, five in number, are the members of the board of education of Union township.

It is charged by the petitioners that a majority of the county board of education, by and with the connivance of the defendant R. T. Fendrick, a landowner in the territory transferred, and of the county superintendent of schools and certain members of

the board of education of the village of Brink Haven, are arbitrarily, unreasonably, and unlawfully seeking to transfer this territory, and that their action in so doing amounts to a flagrant abuse of discretion and is not being taken in good faith and in the exercise of sound judgment. To this charge the county board and the defendant Fendrick separately answer, and make specific and general denial thereof. The facts developed by the pleadings and the evidence are as follows:

Early in the year 1928 certain members of the board of education of the Brink Haven school district, desiring to increase that district's territory, and in pursuance thereof, approached the county board and procured its passage of a resolution transferring a large block of territory from the Union township district to the Brink Haven district. The plat, filed with the county auditor subsequent thereto, shows that the territory first sought to be transferred was within straight lines, and was in all ways in accordance with reason and law. Within a period of thirty days, as provided by statute, all the residents and landowners of the transferred territory, excepting the tenants on the farm of the defendant Fendrick, who are nearest to the Brink Haven district and school, signed and filed a remonstrance with the county board and thereby defeated the contemplated transfer.

Whereupon, members of the Brink Haven board, and the defendant Fendrick, began to devise ways and means to take in as much of such territory as possible, and yet to prevent a legal remonstrance being filed to any resolution of the county board passed in pursuance thereof. It appears that they

were ably assisted by the county superintendent, who drew the second plat, and by at least three members of the county board, who were well advised of all the facts in the matter.

On July 18, 1928, Fendrick, who was a resident of Brink Haven, procured and filed with the county board a petition for transfer of about 800 acres of territory lying within the first territory sought to be transferred. This petition was signed by Fendrick's tenant, and the tenant's wife and aged father. The second plat was skillfully drawn so as to leave out some farms and take in parts of others, but excluding therefrom small parts of certain farms upon which the farm buildings were located. This plat, as drawn, is most irregular in shape, but in fact is so well done as to include the major part of the most valuable river bottom land lying in the confines of the first plat and also the railroad property of two railroads lying therein. The immediate result of the gerrymandering of the first proposed district for transfer was to reduce the number of resident landowners actually residing within the territorial boundaries of the second plat. And this purpose and intent was successfully accomplished, in that but two other resident electors were actually left therein; there being but five in all, consisting of the three petitioners and one Wilhelm and his wife. And of this result and its purpose and intent the county board of education was fully advised, the record showing that the county board had considered the question at least three times, and that one member of the board had strongly stated his opposition to the transfer as being contrary to reason and justice.

Three days thereafter, on July 21, 1928, and after the one petitioner, the father of Fendrick's tenant, had died, three members of the county board, being a majority thereof, two members being absent, duly passed a resolution transferring the territory contained in the second plat. Five days thereafter the plat was duly filed with the county auditor. On the 7th day of August, following, a remonstrance to this transfer was filed with the county board, signed by Wilhelm and his wife and six others who own the lands sought to be transferred, exclusive of Fendrick's farm and the railroad property, five of whom reside on the farms included, but whose farm residences are excluded by the plat as drawn.

The record further shows that at least one hundred and twenty-five other resident electors of Union township school district filed a remonstrance with the county board; that the total tax value of the Union township district was $966,400; that the property transferred had a total value of $183,170; that the result of such transfer would be to materially increase the tax rate of the territory transferred; and that the financial condition of the Union township school district, previously solvent, would thereby become insolvent, and the district be unable to maintain its township schools without state aid.

It is disclosed that there are but six children of school age in the transferred lands, five of whom belong to Fendrick's tenant, and who, previous to any move for transfer, attended the Brink Haven school; the sixth child belongs to the resident elector, Wilhelm, and now attends a Union township school. It further appears that to attend Brink Haven school this child would have to ford the Mohican river, and

that his road thereto is not fit for travel. It is conceded that the transfer takes from the Union township board about one-fifth of its tax duplicate, but relieves it only of its obligation to educate one of its pupils. And it is conclusively proven that the sole purpose, reason, intent, and result of the transfer was to increase the tax duplicate of the Brink Haven district at the expense of the Union township district, and to prevent the residents living in the latter district from lawfully remonstrating against such transfer, all of this to be accomplished without conferring any benefits upon its pupils or the residents and taxpayers of the district.

We appreciate the fact that the power to arrange school districts has been delegated by the Legislature, under authority of Section 3, Article VI, of the Constitution, to the county boards of education, and that wide latitude and discretion have been lodged in the county board, but we do not recognize that there is no limit to the exercise in such matters of its nearly autocratic power.

It has been suggested to us that the new School Code, as originally enacted in 1914 (104 Ohio Laws, 133), contained among its other provisions, as a part of Section 4736, the following: ''In changing boundary lines the board may proceed without regard to township lines and shall provide that adjoining rural districts are as nearly equal as possible in property valuation.''

Under this provision county boards were authorized to transfer territory and to thereby equalize tax duplicates and income. It will be noted that this was a grant of express power, and not one of legislative intent or inference. At its next session, in 1915, this

section of the Code was amended (106 Ohio Laws, 397), leaving out this provision. It must therefore be apparent that the Legislature withdrew this granted power from the board, and intended to confine the power to fix the territorial limits of school districts within the bounds of more efficient school administration. And as said in *Mathews* v. *Board of Education of Cuyahoga County,* 8 Ohio App., 206, 30 O. C. A., 305, "and did not intend that the county board should have supervision over property valuations and tax duplicates, or the right to manipulate and readjust the same."

So, if the question herein may be narrowed to this one proposition, we unhesitatingly take the view that a county board cannot now arbitrarily and for tax purposes only take a part of the territory of one district and annex it to another; for a legislative power, once recognized and granted, and thereafter withdrawn, cannot thereafter be implied except from clear legislative intent appearing in subsequent enactment, and such is lacking in this case.

The transfer contemplated in the matter before us is and can only be predicated upon Section 4692, General Code (106 Ohio Laws, 397), which, in part, provides: "Nor shall such transfer take effect if a majority of the qualified electors residing in the territory to be transferred, shall, within thirty days after the filing of such map, file with the county board of education a written remonstrance against such proposed transfer."

It is claimed by the defendants that in this case the remonstrance is not signed by a majority; that only two are residents thereof. In view of the peculiar facts in this case, that is, that five residents of

the territory have been gerrymandered out of their right to express their opinion, by the inclusion of the property upon which they reside, and the exclusion of that part thereof in which they eat, sleep, and take their rest, we are constrained to hold that they are residents of the territory sought to be transferred.

It is held in *Hedley* v. *Leonard,* 35 Mich., 71: "A person is ordinarily held to reside [and reside means to actually occupy] on all the parcels of land which are actually appurtenant to his house, and it is only when lying in different municipalities that it becomes necessary to divide theoretically a holding which is practically single."

We think the principle of the Michigan case is applicable here, for it is the intent of the statute that the majority of the residents of the district shall have the right to approve or disapprove of the action of the county board, and, holding otherwise, all of the residents of a district might be gerrymandered out of the territory. The statute confers a right to the majority, and this the county board cannot arbitrarily take away, nor can it wantonly nullify the plain intent of the statute under which it acts. We therefore hold that the remonstrance filed to the second resolution of transfer was valid and sufficient in law and should have halted the further action of the board.

It is said in *Kneale* v. *Jennings,* 111 Ohio St., 637, 146 N. E., 87, speaking of Section 4736 of the Code, which likewise refers to transfer of school territory, that, "the statute is silent as to the specific matters the board shall consider when deliberating upon the creation of districts."

That is equally true of Section 4696.  But the court in that case further announced that, "The statute contemplates that the county board, when so engaged, shall give full consideration to every essential element affecting the welfare of the pupils, the residents, and the taxpayers of such districts."

With this we heartily agree, and hold it to be equally applicable to the section involved herein.

Now, the question presents itself: Did the county board in this instance give full consideration to the things stated in the last-cited holding? Our answer must be a strong negative, recurring to the facts as previously set forth herein, which, to our notion, conclusively show that the county board, that is, the majority thereof, wantonly abused their discretion and the high confidence reposed in them by the Legislature.  In *State* v. *Ferranto,* 112 Ohio St., 667, at page 676, 148 N. E., 362, 364, "abuse of discretion" is correctly defined as : "A discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence."  And to the foregoing we think in this case might be added the words, "delegated power," for discretion, when vested in an officer, does not confer absolute or arbitrary power to wantonly and arbitrarily wrong and injure others; and a school district's stability may not be jeopardized at the mere pleasure of a county superintendent or a county board, as was done in the case here.

We direct attention to the following authorities: *State, ex rel. Griffith,* v. *Mowry,* 119 Kan., 74, 237 P., 1032; *Fisher* v. *Birkey,* 299 Ill., 145, 132 N. E., 498; *Id.,* 307 Ill., 625, 139 N. E., 126; and *Appeal of Chicago, M. & St. P. Ry. Co.,* 134 Wash., 182, 235 P., 355 — which lend reason and precedent to the views herein announced.

It is therefore the finding of this court that the county board of education has wantonly, arbitrarily, and unreasonably abused its discretion, and that the attempted transfer is illegal and void, and the county board is hereby enjoined from taking any further steps toward a completion of such transfer, and the county auditor is likewise restrained from transferring the territory of the Union township district to the Brink Haven district, or from diverting the tax collection and payment from the Union township district to the Brink Haven district, and judgment is rendered against the defendants for the costs.

*Decree accordingly.*

LEMERT, P. J., and FUNK, J. (of the Ninth Appellate District), concur.