H. S. WARD v. COMMISSIONERS OF BEAUFORT COUNTY.*

(Filed 19 February, 1908).

1. **Mandamus—Statute—Specific Act—County Commissioners—Courthouse.**

A *mandamus* lies only to compel the performance of a specific act pointed out by statute, and not to the county commissioners to "provide a sufficient courthouse and keep it in good repair."

2. **County Commissioners—Courthouse, Repair—Breach of Duty—Indictment—Questions for Jury.**

When the county commissioners do not keep and maintain in good and sufficient repair the courthouse in their county, and do

---

*BROWN, J., took no part in the decision of this appeal.

not offer or propose to do so, they are indictable for a breach of duty by the grand jury, but they are entitled to have the issue found by the jury.

3. **County Commissioners—Courthouse, Repair—Ministerial Duty—Supervision of Court.**

    The building and keeping in proper repair the courthouse of a county is a part of the ministerial duties of the county commissioners, subject to indictment for willful failure, and not subject to the supervision of the courts.

ACTION for *mandamus,* heard by *O. H. Allen, J.,* at chambers in Washington, BEAUFORT County, November, 1907.

The court found the facts and rendered judgment for plaintiff. Defendant appealed.

The facts sufficiently appear in the opinion of the Court.

*Ward & Grimes* for plaintiff.
*H. C. Carter, Jr.,* for defendants.

CLARK, C. J. This was a *mandamus* issued to county commissioners to "provide a sufficient courthouse for the county of Beaufort, and in good and sufficient repair." Whether the order thus given by the court is to be construed as an order to build a new courthouse, or to rent a building for that purpose, or to repair the old one, the court was without authority to make the order. The facts found by the court are that the defendants "have not kept and maintained in good and sufficient repair the courthouse in their county, and do not offer or propose to do so." If this is so, the defendants are indictable for a breach of duty. They are individually responsible, but they are entitled to set up their defenses and have the facts as to the charge and the defense found by a jury, and not, as here, by the court. As individuals, they may be called on to answer criminally for a breach of duty, on the charge of the grand jury, which speaks for the whole people, but not to a civil action by one or more citizens.

A *mandamus* will not lie to compel the county commis-

sioners to repair or build a courthouse. The duty of providing a sufficient and proper courthouse is to be discharged by the county commissioners, subject to indictment, if there is a willful failure, and to supervision by the people of the county in the election of another board of commissioners, should the voters see fit. It is not a duty resting for enforcement with the Judge of the Superior Court, nor subject to supervision by this Court. The plaintiff has no specific legal right for the enforcement of which he can invoke an order of the judicial branch of the government to supervise and control the administrative branch. The building a new courthouse or repairing an old one is not a mere ministerial matter, admitting of no debate, but is one of discretion, committed to the county commissioners, in regard to which their judgment and discretion must prevail, and not the opinion of a Judge. Only when a grand jury and jury have found a criminal abuse of duty can the court intervene, and then only to punish the individuals, not to compel them, as officials, to do any specific act not required by statute to be done in a specific way or to a prescribed extent.

In *Brodnax v. Groom,* 64 N. C., 244, *Pearson, C. J.,* discussed this subject, and said: "The case before us is within the *power* of the county commissioners. How can this Court undertake to control its *exercise?* Can we say such a bridge does not need repairs; or that, in building a new bridge near the site of an old bridge, it should be erected, as heretofore, *upon posts,* so as to be cheap, but warranted to last some years, or that it is better policy to locate it a mile or so above, where the banks are good abutments, and to have *stone pillars,* at a heavier outlay at the start, but such as will insure permanence and be cheaper in the long run?

"In short," the Court continued, "this Court is not capable of controlling *the exercise* of power on the part of the General Assembly or of the county authorities, and it cannot assume to do so without putting itself in antagonism as well to the

General Assembly as to the county authorities and *erecting a despotism of five men,* which is opposed to the fundamental principles of our government and the usages of all times past. For the exercise of powers conferred by the Constitution the people must rely upon the honesty of the members of the General Assembly and of the persons elected to fill places of trust in the several counties. This Court has no power, and is not capable if it had the power, of controlling the exercise of power conferred by the Constitution upon the legislative department of the government or upon the county authorities."

We can add nothing to the discussion and the decision in that case, which has been repeatedly followed. See cases cited in the annotated reprint of 64 N. C., 250. One of the latest of these sustaining cases is *Glenn v. Commissioners,* 139 N. C., 412, which held that a *mandamus* could not issue commanding county commissioners to repair a bridge.

It is certain, upon the facts admitted and found, that some improvement is much needed in the courthouse of Beaufort County. But the power to order such improvement, under the statute, rests with the county commissioners and not with the courts.

Indeed, it may well be that a large, commodious, up-to-date courthouse, even one costing possibly $100,000, would not be too good for the prosperous, progressive county of Beaufort, with its intelligent population. It may be that such a building, aside from its usefulness, would be such a proof of public spirit as would attract a large influx of population and wealth. In Texas and other progressive States there are counties no larger than Beaufort which have county courthouses larger and more commodious, and more costly, some of them, than the Capitol of this State, which was built seventy-five years ago. It may also be that it is good judgment and just to issue bonds for erecting suitable, even costly, public buildings, since posterity, which will use such build-

ings, will be far more numerous and wealthy, and hence far better able to pay off the bonds, payment of the interest on which may be a sufficient return to be made by the present generation for the use by it of the buildings. It may also be wisdom to issue bonds to put up permanent iron bridges instead of wooden ones, and to build better public roads, and to install other improvements of a public nature, but all these matters rest with the people of each county, acting through their authorities chosen by themselves to administer their county affairs, subject to such authorization as they may obtain from the Legislature, when required by the Constitution.

The courts possess no function to command or control the exercise of such power, when any discretion in regard thereto is reposed by the statute in the county authorities. A *mandamus* lies only to compel the performance of a specific act pointed out by the statute, as in *Tate v. Commissioners,* 122 N. C., 812.

It is much to the credit of the plaintiff that he possessed the public spirit to wish to procure courthouse facilities more suitable and more creditable to his county. But the remedy (other than by indictment of county commissioners for neglect of duty) must be sought in an appeal to the better judgment of the county authorities or by arousing the sound public opinion of a self-governing people, and not by application to the courts.

No cause of action being stated in the complaint, we must order

Action Dismissed.