D. A. WILLIAMS V. THE BOARD OF EDUCATION OF THE CITY OF PARSONS.

No. 16,181.   (99 Pac. 216.)

SYLLABUS BY THE COURT.

1. PUBLIC SCHOOLS—*Location—Dangerous Access—Compulsory Attendance.* Where children entitled to school privileges in a city, if required to attend a certain school designated by the board of education, would be exposed to daily dangers to life and limb so obvious and so great that in the exercise of reasonable prudence their parents should not permit them to incur the hazard necessarily and unavoidably involved in such attendance, they should not be compelled to attend the school so designated.

2. ——— *Separate Schools—Denial of Equal Facilities—Abuse of Discretion.* The board of education of a city of the first class may provide separate schools for white and colored children in the grades below the high school, provided equal education facilities are furnished; but where the location of a school for one of these classes is such that access to it is beset with such dangers to life and limb that children of the class for which it is designated ought not to be required to attend it such children are denied equal educational facilities, and the action of the board requiring them to attend such school and denying them admission to any other is an abuse of discretion.

Original proceeding in mandamus. Opinion filed December 12, 1908. Motion to quash denied.

STATEMENT.

THIS is an original action in mandamus to compel the defendant board of education to admit the plaintiff's children to the Lincoln school in the city of Parsons, and to give them educational facilities equal to those given to the white children in that city, the plaintiff's children being colored.

It appears from the recitals of the alternative writ that the city of Parsons is a city of the first class, and that it is divided into four nearly equal parts by the main line of the Missouri, Kansas & Texas Railway Company, running north and south, and Main street, extending east and west through the city. For a long time the defendant has designated each of these divisions as separate school districts for attendance of school children. The city is also divided into four wards in conformity with these four divisions, each ward containing a schoolhouse. The plaintiff's four children are from six to sixteen years of age, respectively, and prior to the 28th day of September, 1908, had attended the Lincoln school, situated in the first ward, being the northeast district of the city, where the plaintiff resided. On that date the defendant made an order that the plaintiff's children should attend school in the second, or southwest, ward, requiring them to travel a mile and a half to the schoolhouse in that ward, which was known and designated as the colored school or school for colored children, which all children of African descent, commonly called colored, were required to attend. The plaintiff demanded that his children should be allowed to attend the Lincoln school as they had theretofore done, which demand was refused, and thereupon this action was commenced.

The Missouri, Kansas & Texas Railway Company has its machine-shops, foundries and roundhouse in the city, and maintains switch-yards, side-tracks and other tracks adjacent to its main line. Seven of its divisions

have their termini in the city, where its trains are made up and are constantly passing over these tracks, and its Osage division extends from a point on its main line in a southwesterly direction. The St. Louis & San Francisco Railroad Company operates a railroad from Pittsburg to Cherryvale through the city, and also has side-tracks and switch-yards within the city. The school for colored children is located on a piece of ground bounded on the east by the tracks of the main line of the Missouri, Kansas & Texas Railway Company, on the west by the tracks of the Osage division of that railway, and on the north by the tracks of the St. Louis & San Francisco Railroad Company. In order to attend the school as now required by the board of education the plaintiff's children must necessarily travel over thirteen tracks of the main line of the Missouri, Kansas & Texas Railway Company, over which more than 100 trains pass daily, and across three tracks of the St. Louis & San Francisco Railroad Company, over which eight trains pass daily; and the passage of such trains and the switching of cars incident to the operation of these railroads obstructs the crossings over which the children must travel so that their lives are imperiled, and they are often so delayed as to make it impossible to determine when they should leave home in order to arrive at the schoolhouse at the proper time. The school building is in such proximity to these tracks that the noise and confusion from the ringing of bells and blowing of whistles and the passage of trains is so great as to interfere with studies in the school. Because of the perils, noises and confusion incident to this situation, the long distance that the children are compelled to travel, and unavoidable delays at the street crossings where they are compelled to stand in all kinds of weather, the children of the plaintiff are practically excluded from attending the public schools of the city without endangering life and limb.

The schoolhouse was located after the various railroad tracks were built. The alternative writ contains

Williams v. Parsons.

the following statement referring to the location of the
school for colored children:

"So that said building is bounded on the west by the
main line of the Osage division and seven contiguous
side-tracks; that said building is bounded on the east
by the main line of the said Missouri, Kansas & Texas
Railway Company and twelve side-tracks lying con-
tiguous thereto, and is bounded on the north by the
main line of said St. Louis & San Francisco Railroad
Company and two side-tracks lying contiguous thereto;
that the Missouri, Kansas & Texas Railway Company
operates at all hours of the day its engines, cars and
trains of cars over and upon said side-tracks and main
lines of track as above designated."

The defendant moved to quash the alternative writ,
and the present hearing is upon this motion. This
statement is based upon the recitals of the writ.

*C. S. Dennison, J. M. Nation,* and *W. I. Jamison,* for
plaintiff.

*J. G. Slonecker,* for defendant.

The opinion of the court was delivered by

BENSON, J.: The statute relating to schools in cities
of the first class contains this provision:

"The board of education shall have power to elect
their own officers, make all necessary rules for the gov-
ernment of the schools of said city under its charge
and control, and of the said board, subject to the pro-
visions of this act and the laws of this state; to organ-
ize and maintain separate schools for the education of
white and colored children, except in the high school,
where no discrimination shall be made on account of
color; to exercise the sole control over the public schools
and school property of said city; and shall have the
power to establish a high school, and maintain the same
in whole or in part by demanding, collecting and receiv-
ing a tuition fee for and from each and every scholar
or pupil attending such high school." (Gen. Stat. 1901,
§ 6290.)

The plaintiff states that the question presented is
whether the defendant, by locating and constructing

the school building for colored children in the dangerous place described in the alternative writ, is maintaining there a lawful school within the meaning of the law, or whether its construction in such a perilous location is such an abuse of discretion as will sustain this action. He concedes that the board has the right under the statute to establish separate schools for white and colored children, provided they are given equal educational facilities. It is also conceded that this court can not control the just discretion given to the board to locate and build schoolhouses and maintain schools as provided by law. No malicious motives are charged, and no fraud is implied, unless it may be inferred from the location of the schoolhouse in a place so manifestly perilous as to deprive colored children of their right to attend school. Upon the motion to quash the facts stated in the alternative writ must be taken as true, and the single question is thus presented whether the location of the school building is such that as a practical matter the plaintiff's children can not attend school there. It is not a matter of taste or convenience (*Reynolds v. Board of Education*, 66 Kan. 672, 72 Pac. 274), or freedom from necessary danger; but the question is whether the perils that must be encountered are so obvious and so great that in the exercise of reasonable prudence their parents should not permit them to incur the hazard necessarily and unavoidably involved in attending the school.

The schoolhouse was located after the tracks referred to had been laid, and, it is fair to suppose, were being used. The extent of the area included in the school grounds thus surrounded by these tracks, or the number of pupils attending the school, does not appear. It may be that a sufficient school population lives within such boundaries and in places reasonably accessible to make the erection of a schoolhouse there proper for their accommodation, and this may be, and it probably should be presumed is, the reason why this particular

site was chosen; but it does not follow that children living in other parts of the city, who would be compelled to cross the numerous tracks which the plaintiff's children must cross to reach the school, should be compelled to do so or lose all educational privileges. The plaintiff is called upon to choose between a violation of the law and the risk of fine and imprisonment by refusing to send his children to school, as provided in the act compelling such attendance (Laws, 1903, ch. 423), and the peril to their lives in crossing twice a day sixteen railroad tracks, upon which cars are constantly being switched and trains made up and operated, with the incidental sounds of whistles and bells and all the noise and excitement incident to such a situation. It would seem that ordinary prudence, as well as just parental anxiety, would impel the father and mother to refrain from exposing their children to such hazards.

That boards of education, and not the court, must locate schools, untrammelled by judicial interference in the exercise of the discretion wisely committed to them by the law, is a principle to which we give full and hearty approval; but the situation here, according to the recitals of this writ, is so beset with impending dangers that we can not say that the attendance of these children at this school should be compelled. We are constrained to say that the order of the board requiring them to attend this school, and no other, was, upon the facts stated in this writ, an abuse of discretion. As that term is ordinarily used it implies not merely an error in judgment, but perversity of will, passion, or moral delinquency (And. Law Dict. p. 363); but the term is applied here to characterize the denial of the rights of citizens clearly given by the constitution and the laws, which a just discretion will not permit.

"It is really a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." (*Murray v. Buell and others,* 74 Wis. 14, 19, 41 N. W. 1010.)

Having power to maintain separate schools in cities of the first class, the duty rests upon boards of education therein to give equal educational facilities to both white and colored children in such schools. This requirement must have a practical interpretation, so that it may be reasonably applied to varying circumstances. Its scope and purposes are stated in *Reynolds v. Board of Education,* 66 Kan. 672, 72 Pac. 274, and need not be repeated here. But where the location of a school is such as substantially to deprive some of the children of the district of any educational facilities it is manifest that this equality is not maintained, and the refusal to furnish such privileges, where it is practicable to do so, is an abuse of discretion for which the courts will afford a remedy.

Circumstances may exist where the absence of such privileges is practically unavoidable. It is possible that a family or several families may be located so that no school is accessible, but the facts here stated do not present such an emergency. If it exists, or if for reasons not disclosed in the alternative writ it is practicable for these children to attend the school provided by the board, such facts, with any other matter of defense, may be pleaded. In deciding this motion we only hold that upon the facts stated the plaintiff is entitled to relief by mandamus—not necessarily, however, to admit his children to Lincoln school, as requested, but to some school where they will have the privileges given to them by the law.

The motion to quash the alternative writ is denied.