THE STATE OF KANSAS, ex rel. JOHN S. DAWSON, as Attorney-general, etc., *Appellant*, v. THE BOARD OF EDUCATION OF THE CITY OF GREAT BEND, *Appellee*.

No. 18,359.

SYLLABUS BY THE COURT.

1. BOARD OF EDUCATION—*Selecting Site for Schoolhouse—Discretion.* A board of education in a city of the second class is vested with the power and discretion to select sites on which schoolhouses shall be erected.

2. —— *Same.* Two propositions were submitted by the board of education at the same election, one authorizing the issue of bonds to purchase a site for a school building and another providing for the issue of bonds with which to erect the building. The board determined to build the schoolhouse on a site already owned by the district, and an action was brought to enjoin the placing of the school building on that site on the ground that most of the electors who voted upon the propositions understood that a new site would be selected by the board. *Held,* that the understanding which the voters may have had did not interfere with the power and discretion vested in the board to decide where the schoolhouse should be erected and whether a new site should be purchased.

Appeal from Barton district court. Opinion filed November 9, 1912. Affirmed.

*John S. Dawson,* attorney-general, for the appellant; *F. Dumont Smith,* of Hutchinson, *A. C. Banta,* and *Clyde Allphin,* both of Great Bend, of counsel.

*Elrick C. Cole,* and *Wm. Osmond,* both of Great Bend, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action brought by the state on the relation of the attorney-general to enjoin the board of education of the city of Great Bend from proceeding with the erection of a high-school building on a site which it had selected. The board of education having determined that a high-school building was

needed submitted two propositions to the electors of the district composed of the city of Great Bend and the territory attached thereto for school purposes.    One was:

"Shall the Board of Education of the city of Great Bend of the State of Kansas borrow money in the sum of Two Thousand Five Hundred Dollars ($2,500.00) and issue bonds therefor as provided by law, in order to raise funds for the purchase of a school site?"

The other was:

"Shall the Board of Education of the city of Great Bend of the State of Kansas borrow money in the sum of .Seventeen Thousand Five Hundred Dollars ($17,-500.00) and issue bonds therefor as provided by law, in order to raise funds for the erection of a suitable school building?"

At an election held on April 2, 1912, an affirmative vote was cast on both questions.    In behalf of the state it was alleged that prior to the election there was an understanding among the electors that if the bond propositions were carried the board would purchase a new site for the school building somewhere in the south part of the city where it would be convenient for school purposes, and that a majority of the electors cast their votes in favor of the propositions on that theory. The board, it was alleged, was disregarding this understanding, and instead of purchasing a new site, as it was understood it would, was proposing to erect the building on what is known as "high-school block," which is now owned by the city and on which a school building stands.    On a demurrer to the petition the trial court held that a cause of action was not stated and the injunction sought was denied.    On an appeal it is contended that the vote authorizing the board to issue bonds to purchase a site was an express mandate to the board requiring it to purchase a new site, and that it could not use the proceeds of the building bonds to

erect a building on "high-school block" or upon a site already owned by the district.

The legislature has full control over schools and school property. Great Bend is a city of the second class and the legislature has provided that boards of education in cities of that class "shall . . . exercise the sole control over the schools and school property of the city." (Gen. Stat. 1909, § 7600.) Such a provision, it has been held, gives the board the discretion to locate the sites of school buildings. In *Williams v. Parsons*, 79 Kan. 202, 99 Pac. 216, it was said:

"That boards of education, and not the court, must locate schools, untrammelled by judicial interference in the exercise of the discretion wisely committed to them by the law, is a principle to which we give full and hearty approval." (p. 207.)

This expression was emphasized in the opinion rendered in the final disposition of the case. (*Williams v. Parsons*, 81 Kan. 593, 106 Pac. 36.)

The legislature has not provided that the location of a school building in a city of the second class shall be determined by a vote of the electors nor upon the wishes or direction of any number of them. In an ordinary school district the electors are authorized to decide questions of this kind, but evidently it was the legislative view that the interests of. the public would be best subserved in cities by vesting the discretion to control schools and school property in boards of education, and in the exercise of this discretion members of the boards may determine locations and select sites according to the dictates of their own judgment and conscience.

In the propositions voted upon there was no attempt to designate a site nor to instruct the board how it should make the selection. Presumably the voters knew the law and understood that the board and not the voters was vested with the discretion to fix the lo-

cation of the high-school building. By the vote the board was empowered to issue bonds to pay for a site, but in view of the discretion vested in the board it must be regarded as an authorization to issue the bonds for a site if one is needed and it was finally determined to purchase one. It can hardly be inferred that the board is required to issue bonds and buy a site if one should be donated to the district for that purpose any more than it would be required to issue all the bonds voted if only a part of the amount voted was needed to pay for a site. The propositions, although voted on at the same election, were separate and distinct from each other. The result on one could not affect the action of the board on the other. If the electors had voted against the bonds to purchase a site and in favor of bonds to erect a building the adverse result on the first proposition would not have prevented the erection of the building with the bonds voted on the second proposition. The fact that many of the electors may have understood that the board expected to purchase a new site rather than to use one already owned by the district will not interfere with the discretionary power lodged in the board. The members of the board can not escape or shift the responsibility which the law places on them. They are required to exercise discretion and use their best judgment in the matter. They are not to act officially on the understanding or beliefs of others, but must act on their own responsibility and decide and do what in their deliberate judgment seems at the time is right and proper under all the circumstances.

The judgment of the district court is affirmed.