[Civ. No. 2471. Third Appellate District.—February 3, 1923.]

J. W. BROWNING et al., Respondents, v. E. L. DOW et al.,
Trustees, etc., Appellants.

[1] RECLAMATION DISTRICTS—LOCATION OF OFFICE—DISCRETION—MAN-
DAMUS.—A writ of mandate will not issue to compel a board of
trustees of a reclamation district to establish an office in or near
the district as required by section 3454 of the Political Code, as
amended in 1917, where an office has been established by the
board elsewhere and no bad faith or fraudulent conduct
is charged, since the statute vests a discretion in the trustees as
to the location of the office and sets no definite limits upon the
exercise thereof.

APPEAL from a judgment of the Superior Court of
Colusa County. Ernest Weyand, Judge. Reversed.

The facts are stated in the opinion of the court.

Devlin & Devlin and Thomas Rutledge for Appellants.

Seth Millington, Jr., for Respondents.

THE COURT.—The complaint alleges that the defendants
are the trustees of Reclamation District No. 108, located in
Colusa and Yolo Counties; that as such trustees they ceased,
on the sixteenth day of July, 1915, to keep an office in or
near the district and established the office of such district
in San Francisco, where it is now maintained; that the town
of Grimes is in or near the district, is a business center
thereof, convenient to the residents of the district, and pro-
vided with suitable offices and accommodations for the
transaction of the business of such district; and that San
Francisco is neither near the district nor convenient to the
residents thereof as a place for the transaction of its busi-
ness. The prayer is for a writ of mandate compelling de-
fendants to keep an office in or near the district for the
transaction of the business thereof.

1. Character and extent of relief by *mandamus* against an officer
vested with discretion, note, 7 L. R. A. (N. S.) 525.

The answer alleges that San Francisco is nearer to the "land owners owning a majority of the acreage of lands in said district than the Town of Grimes"; that District No. 108, Sacramento River West Side Levee District and Knight's Landing Ridge Drainage District are engaged in the same kind of work; that defendants "constitute a majority of the board of commissioners in each" of the two last-named districts, as well as being the trustees of District No. 108; that the three districts "have a common office, the same secretary, the same engineer and the same attorney or counsel, and also the same manager," thereby reducing the expenses of all of said districts. Various other reasons are alleged for maintaining such office in San Francisco.

The court found that San Francisco is neither in nor near the district, but about 130 miles therefrom; that for the residents of the district to go to San Francisco "involves expense, inconvenience and loss of time, . . . consuming several days in travel and attendance"; that San Francisco is not the most convenient place to keep said office, "but that there is in or near the said district the town of Grimes, and other towns, adequate and suitable for the keeping of the office of said district"; that the "owners of a majority of land of the said district do not . . . reside within the said district, but that the majority of individual land owners of said district do reside within the boundaries of said district"; that the defendants constitute a majority of the commissioners of the Knight's Landing Ridge Drainage District and of the Sacramento River West Side Levee District and "that it would be cheaper and more convenient to operate the three offices together and employ office force jointly, but that the three of said offices could be more conveniently located in or near the lands involved, and there is no restriction on removing the offices of the said last-named districts." Judgment was entered commanding the defendants "to keep an office of said Reclamation District Number 108 in or near the said district for the transaction of the business of said district and to keep the books, maps, papers, records, contracts and other documents of said district in said office."

Section 3452 of the Political Code, as amended in 1874, required the trustees of a reclamation district to "keep their office in the district, or as near as practicable, for the transaction of all business pertaining to the reclamation of the dis-

trict." (Stats. 1873–74, p. 46.) In 1887 this provision was dropped from section 3452 and section 3453 was amended to provide: "The board of trustees must keep an office in or near the district for the transaction of the business thereof." (Stats. 1887, p. 238.) In 1917 this provision was omitted from section 3453 and section 3454 was amended to include the following: "Said board of trustees shall have powers and duties as follows, to wit: (1) To keep an office in or near the district for the transaction of the business thereof." (Stats. 1917, p. 1193.) For the purposes of this opinion the foregoing provisions will be treated as mandatory and identical in meaning and as requiring the trustees to keep an office in the district or as near as practicable thereto.

Had the question of location of the office been committed originally to the decision of the trial court, there could be no doubt as to the sufficiency of the evidence to support the findings and there are persuasive reasons in support of the contention that the trustees abused the discretion vested in them when they located the office in San Francisco, but it does not follow, even if such abuse of discretion be conceded, that the judgment can be upheld. Among the rules by which courts are guided in the issuance of writs of mandate are the following: (1) The writ will issue, in a proper case, to compel the exercise of discretion; (2) It will never issue to control discretion, either before or after the exercise thereof; (3) In a proper case, the writ will issue to correct an abuse of discretion. An abuse of discretion, however, is not the exercise of discretion but action beyond the limits of discretion. (4) It will issue only where the act to be commanded is certain, definite, and fixed. Where discretion has not been exercised, the definite thing commanded is to act. Where the limits of discretion have been exceeded, the definite command is to act within such limits.

[1] The command of the statute to keep an office in or near the district undoubtedly vests a discretion in the trustees as to its location. Their selection of a place anywhere within the district or on one side or the other thereof or a mile or several miles therefrom, depending upon circumstances, would be a reasonable exercise of their discretion. The court cannot be more specific in its commands than is the statute, a limitation which the judgment recognizes. Had the court commanded the defendants to keep an office

at a particular place or within a given distance from the
district it would have been a judicial usurpation of the dis-
cretionary power vested in the trustees. If the trustees at-
tempt to comply with the mandate of the court and establish
an office at a place which, in the opinion of the court in a
subsequent suit, is not near the district, another writ may
issue and another and another until a place is finally selected
which the court shall conclude is near the district. This
piecemeal control of the discretion of the trustees would
constitute judicial usurpation as fully as if exercised in the
first instance. Since the trustees are not charged with
bad faith or fraudulent conduct, it must be assumed that
they exercised an honest judgment in locating the office in
San Francisco. Having exercised their discretion, and the
statute not having set any definite limits to that discretion,
the courts can neither require the trustees to act again nor
set a limit within which they must act. The following au-
thorities sustain the rules herein applied and no decision to
the contrary has been discovered:

"When the discretion has been exercised the writ cannot
be used to compel a party to abandon his own judgment,
and to make it conform to the judgment either of the court,
or of some other person. Every case where a party has
been commanded by *mandamus* to do an act has been a case
where the act was definite, certain and fixed, and where its
character and scope, and the result to flow from it, were as
well known before the doing of the act as afterwards."
(*Jacobs* v. *Board of Supervisors,* 100 Cal. 121, 129 [34 Pac.
630, 632].)

"Whenever such officers or bodies are vested with discre-
tionary power as to the performance of any duty required
at their hands, or when in reaching a given result of official
action they are necessarily obliged to use some degree of
judgment and discretion, while *mandamus* will lie to set
them in motion and to compel action upon the matters in
controversy, it will in no manner interfere with the exercise
of such discretion, or control or dictate the judgment or
decision which shall be reached." (High's Extraordinary
Legal Remedies, 3d ed., sec. 24.)

"It [mandate] does not lie to control judicial discretion,
except when that discretion has been abused; but it is a
remedy when the case is outside of the exercise of this dis-

cretion." (*Ex parte Virginia,* 100 U. S. 313, 323 [25 L. Ed.
667, 671, see, also, Rose's U. S. Notes]. See, also, *Inglin*
v. *Hoppin,* 156 Cal. 483 [105 Pac. 582].)

A writ of mandate was sought to compel the board of
supervisors to erect a suitable jail. The court said: "It is
obvious . . . that the jail provided by the board of super-
visors of La Salle County is far inferior to the wants of the
public necessities of the people of the county, and we are
compelled to express our astonishment, when the wealth and
resources of the county are considered, that the board should
persist in requiring the officers of the county to confine those
who are so unfortunate as to be charged or convicted of
crime, in a prison, which is dangerous to the life and health
of prisoners. . . . Section 26, chapter 34, Rev. Stats. of
1874, p. 307, declares, 'It shall be the duty of the county
board of each county to erect or otherwise provide, when
necessary, and the finances of the county will justify it, and
keep in repair, a suitable courthouse, jail,' etc. . . . Had the
county board failed and refused to provide any kind of a
jail in which to confine prisoners, and it clearly appeared
that the finances of the county were such as to justify the
construction of a jail, we are inclined to the opinion that
the duty enjoined by the statute might be enforced by *man-
damus;* but such is not this case. While the provision of
the statute requiring the county board to furnish a jail may
be regarded as mandatory, . . . yet, the kind of a jail to be
provided must necessarily be left to the discretion of the
board. . . . If the court had power to interfere in this case
because the jail was not properly ventilated, and was damp,
and the room was too small and endangered the lives and
health of the prisoners, upon the same principle, if a county
should construct a jail at a cost of $30,000, and some tax-
payer of the county was able to show that the cells were too
small, or the building insecure, or that money enough had
not been expended to make the building as elegant as the
wealth of the county demanded, in such a case the court
would also have to interfere." (*People* v. *Board of Super-
visors,* 84 Ill. 303 [25 Am. Rep. 461].)

In affirming a judgment denying a writ of mandate re-
quiring the board of supervisors to erect a fireproof clerk's
office it is said:

"The provisions of the Code which require the board of supervisors to provide a fireproof clerk's office are mandatory. . . . One of the marked characteristics of a proceeding by *mandamus* is that, if the functionary whose conduct is complained of is by law to exercise any discretion, that discretion will not be controlled by a writ of *mandamus;* for that would be to transfer the discretion which the law commits to the functionary to the court which undertakes to award the writ. . . . It cannot be said that the erection of a fireproof clerk's office is an act so clear and specific that no element of discretion is left in its performance. . . . If this court was of the opinion that the clerk's office in question was not fireproof, and awarded the writ commanding the board of supervisors to provide a fireproof clerk's office, how are they to determine whether they should erect a new building, or repair or remodel the old? If the court goes into details and directs them what to do, it usurps the discretion vested in them. If the court does not do this, how are they to know what will satisfy the requirement of the statute in the opinion of the court? The county authorities having exercised their discretion, and provided a clerk's office intended to be fireproof, the circuit court did not err in refusing the writ." (*Broaddus* v. *Board of Supervisors,* 99 Va. 370 [38 S. E. 177]. See, also, *Ward* v. *Commissioners,* 146 N. C. 534 [125 Am. St. Rep. 489, 60 S. E. 418].)

"An act was passed to divide the County of Surry. . . . By the same act the defendants were appointed commissioners 'to select and determine upon a site for a permanent seat of justice for Surry County, who shall locate the same as near the centre of said county as a suitable location can be obtained, taking into consideration both the extent of territory and population.' The commissioners, in their return, state that they have performed their duty with a strict and conscientious regard to the requirements of the act. These commissioners are the servants of the General Assembly to perform the acts required of them; and to their discretion the business was entrusted. With the exercise of that discretion we cannot interfere, as they in their return state their compliance substantially with the act. If the court were to issue its *mandamus,* what would it command? That the commissioners should proceed to select a site for the county town, observing the requirements of the act.

We could not tell them whether the proper site is to the east or west of the centre line designated in the petition; or whether, if on the one side or the other, it would be the proper place, regard being had to the population of the county. To do so, would be assuming an authority not given to us, but to the defendants, the commissioners. We could make no other fiat than the one already set forth. What other return then could the defendants make than the one they have made, if it be the truth? Another *mandamus* might be issued, to which the same return might be made; and in this way the matter might be bandied about from term to term." (*State* v. *Bonner*, 44 N. C. 257.)

Had the statute fixed limits to the discretion of the trustees, as that they should keep an office in the county in which the district or some part thereof is located, mandate would lie to compel them to keep the office within those limits, but the writ will not issue to direct and control the indefinite discretion vested in the board by the law. Since the question considered is decisive of the case, it is unnecessary to consider other grounds urged for a reversal.

The judgment is reversed, with directions to the trial court to enter judgment on the findings in favor of defendants.