F. L. ARTHAUD, Appellant, v. C. J. GRIFFIN, Appellee.

FEBRUARY 7, 1928.

F. L. Arthaud, pro se.

A. V. Proudfoot, for appellee.

KINDIG, J.—This proceeding involves the question as to whether or not the district court exceeded its discretionary power in dismissing plaintiff's action, under Sections 11245 to 11248, both inclusive, of the 1924 Code. Determination of the point necessitates a study of that legislative enactment as applied to the peculiar facts and circumstances presented in the case at bar.

Historically, the steps taken and the results thereof are as follows: On August 8, 1925, appellant, as plaintiff, filed his petition. Appellee, then defendant, on September 1st of that year, moved to strike such pleading, for the alleged reason that plaintiff there was a nonresident practitioner, and had failed to appoint a resident attorney to represent him. That attack of appellant was sustained by the lower court, but this ruling was reversed by us in Arthaud v. Griffin, 202 Iowa 462, under date of October 26, 1926. Procedendo was returned January 27, 1927, and plaintiff-appellant filed an amended petition February 21st thereafter.

Next in order of events the defendant-appellee, on April 1st, filed a motion and affidavit for a cost bond, on the ground that the plaintiff was a nonresident of the state, and the district court sustained the application April 6th, and fixed the amount of the penalty at $200, and the date of filing the instrument ''on or before May 1st.'' Concurrent with the judicial action in that regard, appellee, through his lawyer, notified appellant by letter of the order, and in addition thereto volunteered the following information:

''Therefore this means that the case goes over until the next term of the court, as the court here will probably adjourn tomorrow or next day.''

Replying, appellant, on April 8th, sent the following communication to appellee's legal representative:

''Had I known of this requirement I would have promptly complied with it, and the case could have been taken up this term. I very much regret it going over to the next term.''

Continuing the correspondence, appellee, through his counsel, under date of April 9th, stated to appellant:

''After your cost bond is filed and approved by the court I shall probably have some other pleadings to file. I question very much whether or not the case would have been tried had you been here, as I am expecting to insist upon its being determined on motions or demurrers or both before it gets to a jury.''

In the meantime, appellant was endeavoring to procure the necessary sureties for the ''bond,'' but, not having readily obtained the same, concluded to furnish a cash undertaking, and, as he says, ''being lulled to sleep by the delays and continuances allowed his adversary,'' together with the acquiescences suggested by appellee's correspondence, on May 2d he wrote appellee's advocate:

''The time allowed for filing my cost bond, I am aware, is up. I am going to ask you to not take advantage of my delinquency in this, for at least thirty or sixty days; since it is my purpose now to put up cash instead of a bond. * * * This will not discommode you, as the case will not be called until the September term, * * * .''

Immediately appellee protested, and on the same day, placed of record his ''motion to dismiss on the ground that the cost bond had not been filed, as ordered by the court.'' How-

ever, appellant filed a valid and acceptable ''bond'' May 22d. Notwithstanding this, the court, on May 31st, upheld the ''motion to dismiss,'' and made formal record thereof June 14th.

I. Support for the affirmance of the trial court is predicated upon the last of the Code sections first referred to,—that is to say, 11248, which reads as follows:

''An action in which a bond for costs is required by the three preceding sections [11245-46-47] shall be dismissed, if a bond is not given in such time as the court allows.''

Argument by appellee is based upon the ground that the maximum limit for complying with the judicial mandate was May 1, 1927, and, appellant having failed to meet that requirement, no other consequence could result but a nonsuit. Criterion for this theory is the word ''shall,'' as used in the quoted paragraph of the statute, to which reference has just been made.

II. Interpretation of that language has been more liberal, and this court has previously decided that it is not mandatory, but directory only. *D. M. V. Live Stock Ins. Co. v. Henderson*, 38 Iowa 446, suggests:

''If the condition and circumstances of the plaintiff were such as to render further time necessary, and the fact had been made to appear to the court below, more time should have been given.''

More definite and far-reaching, however, is our pronouncement in *Funk v. Church & Fitzgerald*, 132 Iowa 1, wherein we said:

''Before answering, defendants moved for a cost bond, owing to the nonresidence of plaintiff. The motion was confessed, and an order entered requiring such bond to be filed within thirty days. The bond was filed one day late, and owing to this, the defendants moved that the action be dismissed. The motion was overruled. Appellants rely on Section 3848 of the Code [1897], which directs that 'an action in which a bond for costs is required by the last section shall be dismissed if a bond is not given in such time as the court allows.' This statute, though peremptory in form, is remedial in character, and should be construed as directory. The statute means no more than that, upon a refusal to comply with the order of court, the action will be dismissed. But the court may extend the time, and in treat-

ing the bond as filed in time, the ruling on the motion to dismiss was tantamount to such extension.''

III.   There are two differences between the facts in the *Funk* case and those in the present litigation.  Judicial discretion in the citation was exercised in favor of the plaintiff, and the ''bond'' was supplied before the ''motion to dismiss'' was presented; while here the court's choice was adverse to the appellant, and his security was not forthcoming until after the plea for dismissal was interposed.  Do these discriminating circumstances justify confirmation of the judgment below?  We think not.

IV.   Fundamentally, the purpose of the ''cost bond'' is to protect the taxpayers, on the one hand, and the opposing litigant, on the other, from loss that would otherwise occur because of the failure of a nonresident to pay the expenses of court proceedings instituted by him which might, under the law, be assessed against such plaintiff, and collection, in that event, could not be made if, perchance, he owns no property within the jurisdiction of the state.  Punishment for the instigator of the suit is not the goal, but rather the protection of others against damage.  15 Corpus Juris 198, Section 477.  Accomplishment of that intendment was completed when the ''bond'' was deposited before the district court ''dismissed'' the cause.

V.   Compliance with the ''court's order'' in that regard is quite apart from appellant's cause of action, but rather, such conformity amounts to a prerequisite for the enjoyment of the privilege to pursue recovery thereunder.  Tardiness on appellant's part here is not of such kind or nature as to indicate or suggest abandonment, nor does defiance of the court's authority or neglect of its mandate appear because of the belatedness.  Neither inconvenience nor delay ensued as a consequence of the lateness, because the trial court, at the instigation, or at least with the consent, of appellee, had previously ''continued'' the suit until the September term of that court.

Mere arbitrary technicality, then, is left to call for a ''dismissal'' upon this occasion.

VI.   Discretion of the judiciary has been variously defined, as a review of the encyclopedias and cases will disclose.  Some of those conceptions are:

'' 'Judicial discretion is a phrase of great latitude; but it

never means the arbitrary will of the judge \* \* \* .' It is a legal discretion, founded upon conditions which call for judicial action, as distinguished from mere individual or personal view or desire." *In re Superintendent of Banks*, 207 N. Y. 11 (100 N. E. 428).

18 Corpus Juris 1135, Section 3, contains this text:

" \* \* \* but in all cases, courts must exercise a discretion, in the sense of being discreet, circumspect, and prudent, and exercising cautious judgment. \* \* \* However incapable of exact definition, it is clearly recognized that discretion is not absolutely without elements, conditions, or limitations. The term implies the absence of a hard and fast rule, yet it should not be another word for 'arbitrary will,' 'inconsiderate action,' or 'unstable caprice.' "

VII. Analogy may be found in other statutory proceedings involving similar principles, as illustrated by *Elwood v. Board of Supervisors of Sac County*, 156 Iowa 407, concerning Section 1989-a14 of the Code Supplement of 1913, requiring that, in case of an appeal in drainage proceedings, the appellant shall file petition setting forth the order or decision appealed from, and his claim and objections relating thereto; then saying:

" 'A failure to comply with these requirements shall be deemed a waiver of appeal, and in such case the court shall dismiss the same.' "

Elwood, in the cited case, failed to file his petition within the time named by the drainage law. Our discussion there embodies this situation:

"No ruling had been made on the motions to dismiss when the petitions were filed, and the district court clearly had jurisdiction of the cases. \* \* \* They [petitions] were in time to answer every requirement of the law, and, while the statute fixes the time when the petition shall be filed, failure to comply may be excused, and the case retained for trial. \* \* \* Unless the requirement be jurisdictional, the uniform tenor of the authorities seems to be that, if the step required be omitted by mistake, accident, or neglect, it may be cured after motion is made, provided it be done before the motion is decided."

Again, reviewing a like contest, we said, in *Reichenbach v. Getty*, 163 Iowa 25:

"It was, therefore, not a mere exercise of discretion, but,

so far as we can ascertain from the record before us, a determination of rights or a question of fact, and also in possibly viewing the statute [drainage laws] as mandatory, rather than as an exercise of discretion. In this view, together with the fact that, even at the farthest, there was no unreasonable delay in tendering the petition, which may properly be treated as a filing, should the court have consented to it, we conclude that, in harmony with the purpose of the statute as construed in the cited case [*Elwood v. Board of Supervisors of Sac County*, supra], the appellant has the right to be heard upon the merits of his appeal * * * ."

Construction of the Code provisions must be in the light of the liberality safeguarded by Section 64 of the Code of 1924, which declares:

" * * * Its provisions and all proceedings under it shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice."

See *Elwood v. Board of Supervisors of Sac County*, supra.

VIII. So appellant, while proceeding, perhaps, somewhat informally, was, no doubt, induced to apathy because of the performances of appellee, the written messages, and the final postponement of the "case" until September. Especially is this true when it was appellant, rather than appellee, who was insisting upon the early trial. Appellant, in effect, asked for additional time, and the usual incidents here related were, as shown by the court's ruling, before it. Had such decision antedated the "filing of the bond," there could be no question of its propriety, for in that event the "dismissal" would be imperative. But because of the peculiar facts and circumstances here manifest, and in view of the evident and unmistakable spirit of the specific, as well as the general, policy of the law indicated by the "statutes" applicable, we are constrained to hold that the district court abused its discretion, and its judgment should be, and hereby is, reversed.—*Reversed.*

STEVENS, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.