STATE ex rel. TAYLOR, Respondent, v. BOARD OF COUNTY COM'RS OF MISSOULA COUNTY, et al., Appellants.

No. 9271.

Submitted March 23, 1954. Decided May 21, 1954.

270 Pac. (2d) 994.

Messrs. W. T. Boone, Russell E. Smith, Missoula, for appellants.

Mr. Alfred F. Dougherty, Helena, for respondent.

Mr. Smith and Mr. Dougherty argued orally.

MR. JUSTICE FREEBOURN:

LaVerne Taylor, plaintiff and respondent, Missoula County auditor, filed her affidavit and petition for a writ of mandate in the district court, to compel the county commissioners of Missoula County, defendants, and appellants, to furnish her adequate office space, assistance, and equipment to carry on the duties of her office. From a judgment in her favor the county commissioners appealed.

Missoula County, without a county auditor for 18 years, upon becoming a county of the fourth class in 1950, elected plaintiff its county auditor to take that office in January 1951. Her affidavit and petition alleges in part: "That * * * the furnishing of adequate and necessary office space, office equipment, and personnel to the affiant so that she may perform the duties imposed by law upon her as a county auditor is a duty * * * *" of the Missoula County commissioners, which they arbitrarily and capriciously refused to perform and "is a denial by defendants of the right of the affiant to the use and enjoyment of the office" of county auditor.

The defendants' answer admitted plaintiff was the county

auditor of Missoula County and set forth that they "did provide affiant, as the county auditor, an office in the County Court House * * * and did furnish such office" with office furniture and equipment, and in so doing "exercised and performed discretionary acts," and that "any duty imposed upon them by law as to the furnishing of office space, equipment, furniture and personnel to the affiant, as county auditor, involved the exercise of discretion by the board of county commissioners, and that such discretion has been exercised in such matters in a reasonable manner under all the circumstances," and that their actions in so doing were neither arbitrary nor capricious.

The judgment of the district court, which contained findings of fact and conclusions of law, directed "that a Peremptory Writ of Mandate issue out of this Court, commanding and directing the defendants herein as follows: * * * To furnish and supply to LaVerne Taylor, plaintiff as county auditor of Missoula County, rooms and quarters which are either naturally or artificially ventilated; * * * which contain storage space secure and large enough so that the plaintiff may accept and safely keep books, vouchers, claims, and other papers which she is required by law to accept and keep; * * * of such area that the other county, township, school district and state officers whose duties require them to use the office of county auditor or to consult with the county auditor and taxpayers and members of the general public who come to and use the office of the county auditor may be accommodated and be accorded privacy; * * * of such area that plaintiff and subordinate personnel may carry on their work without interference and physical contact with each other as is now the case in the cramped quarters assigned to plaintiff; * * * to furnish and supply * * * a deputy or assistant qualified in accounting or auditing procedures * * * and office equipment in addition to that with which she is presently supplied so that she may perform the duties imposed upon her by law."

In its findings of fact the district court found, in addition to other things: "That the plaintiff has addressed at least three

written requests and several oral requests to the defendant board of county commissioners asking that said board of county commissioners supply her in her official capacity as county auditor with office space, office equipment, and personnel in addition to the space, equipment, and personnel with which they have supplied her; that in each instance when plaintiff has made such written request she has received neither acknowledgment nor reply from defendants; that in each instance when plaintiff has made such oral request defendants have refused to supply plaintiff with such additional space, equipment, and personnel. * * *

"That defendants have furnished to plaintiff as an office in which to carry on and perform the duties required of her by law an area eight feet wide and twenty feet long; that said area has no outside windows or doors; that said area was formerly a part of the reception room of another county office; that the partition separating said area from said reception room is a partial or semi-partition extending from the floor to a line approximately six and one-half feet from the floor, leaving the area between such line and the ceiling proper open and not partitioned; that noises from the said reception room carry freely through and over said partition; that ventilation cannot be provided to the said area designated as plaintiff's office directly from the outside by any means whatsoever and that whatever fresh air reaches plaintiff's office must come over the top of said semi-partition or through the door which connects the said adjoining reception room and plaintiff's office; that there are windows in said semi-partition which allow some light to be transmitted from the adjoining reception room to plaintiff's office; that such light is insufficient at all times to permit a person in plaintiff's office to work without artificial light. * * *

"That defendants have furnished said area eight feet wide and twenty feet long with two desks, two desk chairs, a typewriter stand, typewriter chair, letter file cabinet, and a book cabinet or case; that such office furnishings occupy such an amount of space in said area eight feet wide and twenty feet long

that there is not room for more than one person to walk normally between the desks and wall and that there is not room for plaintiff to seat and confer with more than two persons at a time; that plaintiff is forced to and has borrowed offices of other county officials or used the courthouse halls when she has been called upon to confer in her official capacity with groups comprised of more than two individuals. * * *

"That defendants have furnished to plaintiff one clerk-typist and have not at any time provided plaintiff with a deputy or assistant qualified in accounting or auditing procedures. * * *

"* * * that plaintiff has requested defendants to supply her with an additional typewriter and an additional adding machine, and defendants have refused such request; that plaintiff has secured such additional adding machine and additional typewriter by borrowing them from private business concerns in Missoula County. * * *

"That all persons having claims against Missoula County are required by law to present them to plaintiff; that plaintiff is required by law to examine all such claims and report her findings to the defendant board of county commissioners; that such claims, inclusive of payroll claims, but exclusive of special payroll claims such as those for election clerks and judges, number approximately four hundred a month in Missoula County; that the budget for expenditures by Missoula County for the fiscal year 1952-53 is $1,117,442.72; that plaintiff is unable to maintain her examination of such claims in a current status and is now several hundred claims behind in her work because she has not sufficient subordinate personnel to assist her. * * *

"That plaintiff is required by law to make an examination of the books and accounts of the county treasurer, county clerk and recorder, sheriff, clerk of the district court, and all other county and township officers, within fifteen days next preceding each regular session of the board of county commissioners and is required to make report to the board of county commissioners of the moneys received and disbursed by each of said officers; that plaintiff has not been able to perform the duty so required

of her by reason of the fact that she cannot personally perform every duty required of her and defendants have not furnished her with sufficient subordinate personnel to assist her. * * *

"That plaintiff is required by law to prescribe the method of keeping the books in school districts of the third class and to make an examination of the books of such school districts at least once each year and that the clerks of such school districts are required by law to deliver to plaintiff all books, vouchers, claims, and other papers pertaining to their offices for the purpose of such examination; that plaintiff is not able to accept and safely and securely store such books, vouchers, claims, and other papers in the eight-by-twenty foot area furnished to her as an office by defendants, and has therefore refused to accept such books, vouchers, claims, and other papers; that plaintiff has completed such examination of eleven such third class school districts since entering upon her duties as county auditor, but is not able to maintain such examinations on a current basis in the manner and at the time required by law by reason of the fact that she does not have sufficient space or subordinate personnel to assist her. * * *

"That plaintiff has pointed out to defendants her inability to perform her duties in the space alloted to her and with the equipment and personnel assigned to her; that defendants have failed and refused to give her additional space, additional equipment, and additional personnel; that the office space, office equipment and subordinate personnel presently supplied to plaintiff by defendants are insufficient and inadequate for the performance of her duties as county auditor."

The above findings of fact are justified and supported by substantial evidence.

According to plaintiff she made three visits to see the county commissioners in December 1950 and talked orally to those present about providing her with an office. She testified: "I was told a number of times * * * there was no need for an auditor in Missoula County; that I would have no help in the office, and that they hadn't provided an office for the auditor, and.

that they were not sure that they would. * * * when I asked about an office, about personnel in order to perform the duties of auditor, he [the chairman] became furious * * * and swore at me. He asked me who the hell I thought I was, coming in here and wanting to be provided with an office when there is no need in the county for an auditor * * * that there was no need for an office of the auditor in Missoula County. * * * I recall that the chairman'' in talking to others said ''they really didn't need to worry about my being in the court house very long anyway * * *.'' When she protested inadequacy of office space given her, ''I was told by the chairman * * * that I would take what they gave me or they'd put me in the hall or in the basement.''

According to her testimony the space allotted was eight feet by twenty-two feet, and ''it has no windows. * * * It is an artificially lighted room at all times. * * * There is no means of ventilation in the room other than when it gets too terribly stuffy in there—and there are times when it is most uncomfortable—I ask the county superintendent of schools if I may open the door into her room and try and ventilate the office in that manner.''

The chairman of the county commissioners testified that in looking for office space for the county auditor, ''they considered the room where the auditor had been 20 years before. However, we found that that room was filled with books and records of the county treasurer * * * we considered the county attorney's private office. * * * but he had a big closet there that he had exhibits and things in, and law books, and it wasn't advisable to try to divide that room either. * * * there was some talk I think of asking Mr. Woods, the justice of the peace, to move, and there was objection to that from the highway patrolmen and others [attorneys] * * * because the law said that the commissioners may give him [the justice of the peace] quarters; it's not necessary that he has to have them, but it's good judgment to have the justice of the peace in the court house * * *''

On cross-examination the chairman testified:

"A. Well, the highway patrolmen objected [to moving the justice of the peace], and attorneys * * * they didn't want that office moved.

"Q. Did they object to you at an official meeting of the board of county commissioners? A. No, I don't believe they did; we just heard talk * * *

"Q. Which attorneys objected * * *? A. Well, I can't name anybody specifically. * * *

"Q. Which members of the sheriff's staff told you about it [atttorneys objecting]? A. I couldn't tell you now. * * *

"Q. Which highway patrolmen objected? A. Oh, I wouldn't know. * * * A. No, I don't think we ever had any really official [highway patrol] objection. * * *

"Q. So that all it was [objections to moving the justice of the peace] was rumor to you, in fact? A. Pretty much rumor, yes."

Continuing to show what action was taken to find an office for the county auditor, the chairman of the county commissioners, on direct examination, testified: "* * * we even discussed the question of asking the county agent's office to move, and of course then that met with a flood of objections from the farm bureau and others; * * * we have a building where the welfare department is, we partitioned that office off and there is room in the back end of that building * * * and that wasn't advisable either; and we had an offer of the upstairs in the chamber of commerce building; and there was a lot of objections to that too. * * * there wasn't any other possibility. * * * I think the commissioners felt that the auditor didn't need a deputy when she first started in there. Then afterwards * * * I made a motion to allow her a deputy; it was voted on adversely by the other two commissioners * * * subsequently * * * it was reconsidered by the commissioners and they honored her request to have an assistant * * * I have always taken the position that her office wasn't big enough and of course if she had a bigger office she could use more equipment."

Cross-examined as to the welfare building, the chairman testified:

"Q. Now, where is the building that the welfare department is located? A. It's down on Higgins Avenue.

"Q. What kind of a building is that? Is it owned by the county? A. It's a regular store building * * * we lease * * * the first floor * * * they never suggested putting Mrs. Taylor * * * there."

Although the record shows that in July 1950, a time when the person who would be elected to the office of county auditor was unknown, the county commissioners as "estimated expenditures" for the first six months of 1951 of the new auditor's term starting January 1951, budgeted $1,050 for a deputy auditor, no deputy was allowed plaintiff.

The chairman's testimony shows:

"Q. Does she [plaintiff] have a deputy, sir? A. I don't think so.

"Q. Do you know? A. Sure I know.

"Q. Does she have a deputy? A. No. * * *

"Q. Well, did the board ever consider ever giving her a deputy? A. * * * I don't think they did.

"Q. Despite the fact she requested a deputy in the letter of February 1, 1951, * * * of March 3, 1951, and * * * of August 8, 1952? A. I don't believe so."

The defendants, in their answer, and by statement of their counsel, admitted receiving the three letters referred to.

The district court, in its conclusions of law, made a part of the judgment, concluded: "That the failure and refusal of the defendants to supply, furnish and provide the plaintiff, county auditor, with adequate and sufficient office space, office equipment, and facilities, and subordinate personnel * * * arises from a mistaken view of the law on the part of the * * * county commissioners, as to the duties which the said county auditor is under the law bound to perform."

This conclusion of the trial court arises, undoubtedly, from the fact that the county commissioners asserted "a number of times * * * there was no need for an auditor in Missoula County * * *" when the law, R. C. M. 1947, sec. 16-3201, provides: "'The

office of county auditor is hereby created and the same *shall exist* in all counties of the state of Montana of the first, second, third and fourth classes. * * *'' Emphasis supplied.

R. C. M. 1947, sec. 16-1006, provides that: ''The board of county commissioners has jurisdiction and power * * *: When there are no necessary county buildings, to provide suitable rooms for county purposes.''

As said by this court in Bennett v. Petroleum County, 87 Mont. 436, 288 Pac. 1018, 1020: ''The board of county commissioners is clothed with authority to lease any real property necessary for county purposes 'when there are no necessary county buildings.' [R. C. M. 1947, sec. 16-1006, supra].''

The office of county auditor is an important one with many duties and its proper fulfillment requires proper housing, help and equipment.

Under the evidence in this case, and considering the authority which the defendants have and failed to exercise, it was an abuse of discretion and an arbitrary act to furnish plaintiff, as an office, an eight by twenty-two foot partitioned space, with no windows, insufficient ventilation, and but artificial lighting. Such action was neither just and proper, nor did it constitute, in law, an honest exercise of judgment.

As said by this court in Grant v. Michaels, 94 Mont. 452, 23 Pac. (2d) 266, 269: ''* * * the phrase 'abuse of discretion' implies, not merely an error in judgment, but perversity of will, prejudice, passion, or moral delinquency (Grayson County v. Harrell (Tex. Civ. App.), 202 S. W. 160; Citizens St. R. Co. v. Heath, 29 Ind. App. 395, 62 N. E. 107; Williams v. Board of Education, 79 Kan. 202, 99 Pac. 216, 22 L. R. A., N. S., 584), but it does not necessarily imply wrong-doing or a breach of trust, or import bad faith (Lyles v. Williams, 96 S. C. 290, 80 S. E. 470; Root v. Bingham, 26 S. D. 118, 128 N. W. 132); it conveys, rather, the idea of acting beyond the limit of discretion (Browning v. Dow, 60 Cal. App. 680, 213 Pac. 707; State Board v. Brown, 70 Colo. 116, 198 Pac. 274); the disregard of the evidence adduced (State v. District Court, 213 Iowa 822, 238 N. W.

290, 80 A. L. R. 339) ; the basing a decision upon incompetent or insufficient evidence (Katz v. Delohery Hat Co., 97 Conn. 665, 118 A. 88) ; an exercise of discretion to an end or purpose not justified by, and clearly against, reason and evidence (Trimmer v. State, 142 Okl. 278, 287 Pac. 783; Seaba v. State, 144 Okl. 295, 290 Pac. 1098) ; a clear error in law in the circumstances (Tunstall v. Lerner Shops, 160 S. C. 557, 159 S. E. 386; Heaton v. Jackson, 34 Ohio App. 424, 171 N. E. 364). * * *

"If the statute gives to the board the right to decide the question of affirming or reversing the county superintendent's order as it sees fit, the members are not vested with discretion, but with arbitrary power. 'Discretion does not mean the arbitrary will or merely individual or personal view.' State v. Canada, 48 Iowa 448; Arthaud v. Griffin, 205 Iowa 141, 217 N. W. 809."

For the reasons stated the judgment of the district court is affirmed.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICE BOTTOMLY, concur.

MR. JUSTICE ANGSTMAN: (dissenting).

In my opinion neither the district court nor this court has the right to settle the controversy between plaintiff and the board of county commissioners.

Article IV, sec. 1, of the Montana Constitution divides the powers of government into executive, legislative and judicial departments, and provides that "no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted." The exception clause has no application here because there is no other constitutional provision bearing upon the question here presented.

R. C. M. 1947, sec. 16-1006, confers jurisdiction and power upon the board of county commissioners to provide suitable rooms for county purposes when there are no necessary county

buildings. It has authority to erect and furnish a court house and such other public buildings as may be necessary. R. C. M. 1947, sec. 16-1008.

Likewise the law fixes the number and compenastion of deputy county officers (R. C. M. 1947, secs. 25-602, 25-603, 16-3706), but authorizes the county commissioners "to fix and determine the number of deputy county officers and allow to the several county officers a greater or less number of deputies or assistants than the maximum number allowed by law, when in the judgment of the board of county commissioners such greater or less number of deputies is or is not needed for the faithful and prompt discharge of the duties of any county office". R. C. M. 1947, sec. 25-604.

Courts have no right to substitute their discretion for the discretion reposed in officers or boards by legislative acts. State ex rel. Highway Commission v. District Court, 107 Mont. 126, 81 Pac. (2d) 347; State ex rel. Bowler v. Board of County Com'rs, 106 Mont. 251, 76 Pac. (2d) 648; State ex rel. North American Life Ins. Co. v. District Court, 97 Mont. 523, 37 Pac. (2d) 329, and cases therein cited.

The rule applicable was appropriately stated in Carbon County v. Draper, 84 Mont. 413, 276 Pac. 667, 669, as follows: "Having power to act (section 4465 [Rev. Codes of 1921 R. C. M. 1947, sec. 16-1001], supra,) the board had jurisdiction to decide, and, if it decided wrongly and error was committed in so doing, it did not usurp an unconferred jurisdiction. In other words, the authority to examine, settle, and allow in no manner depends on the nature of the decision to be rendered. The power to hear and determine necessarily carries with it the power which makes the determination binding, without reference to the question of whether it be right or wrong. If this were not so, the findings and conclusions of the board on matters which it has authority to decide would be of no value. There must be a time when controversies end, and, when the authority is expressly conferred upon the board, as here, the determination, even though erroneous, ought not to be assailed."

Since we have no statute prescribing what space a county officer must have, that question, like that of the number of deputies, rests in the discretion of the board of county commissioners.

If the majority opinion in this case is right, then it opens a Pandora's box of litigation that heretofore has been locked by the Constitution. If that opinion is right, then when the governor acts upon an application for a pardon under R. C. M. 1947, sec. 94-9801, his action is subject to review by this court; and if this court thinks the board of prison commissioners has abused its discretion in ruling upon an application for pardon, the court may substitute its judgment for that of the board. Yet this is clearly contrary to the general rule. 16 C. J. S., Constitutional Law, sec. 157, p. 497.

Under R. C. M. 1947, sec. 82-1127, it is the duty of the board of examiners as the board of supplies and furnishing board ''To hire all offices for the state officers, and to furnish the same''. If the majority opinion in this case is correct, then any state officer who is dissatisfied with the office and furnishings provided for him by the board may come to us in quest of a better office and furnishings.

Under R. C. M. 1947, sec. 82-1145, the board of examiners may employ clerical help for any state officer or board when necessary. If the majority opinion is correct, then any state officer or board, dissatisfied with the amount of clerical help provided, may rush to the courts for relief. These and countless other illustrations might be given where we will be asked to substitute our discretion for that of the particular officer or board vested with jurisdiction and power over a certain subject matter on the charge that there has been an abuse of discretion.

The general rule which I think has application to the question here presented is stated in 16 C. J. S., Constitutional Law, sec. 145, p. 434, as follows: ''Questions which the legislature under its constitutional power has submitted for decision to administrative officers in the performance of purely administrative functions have been held not to be matters for judicial considera-

tion.'' The same rule applies to functions intrusted to the executive department generally. 16 C. J. S., p. 432. And see to the same effect Shelley v. Normile, 109 Mont. 117, 94 Pac. (2d) 206.

Mandamus will lie to compel a board to perform a ministerial act about which it has no discretion; but it does not lie unless there is a clear duty not involving discretion. McCarten v. Sanderson, 111 Mont. 407, 109 Pac. (2d) 1108, 132 A. L. R. 1229; State ex rel. State Pub. Co. v. Smith, 23 Mont. 44, 57 Pac. 449. It takes more than difference of opinion to make for an abuse of discretion. Fulmer v. Board of Railroad Commissioners, 96 Mont. 22, 28 Pac. (2d) 849; Grant v. Michaels, 94 Mont. 452, 23 Pac. (2d) 266.

Relatrix under the law is not without a remedy. She in legal effect asserts that the county commissioners refuse to perform the official duties pertaining to their office. R. C. M. 1947, sec. 94-5516, makes any officer subject to removal from office who ''has wilfully refused or neglected to perform the official duties pertaining to his office''. This is also provided for in R. C. M. 1947, sec. 94-4708.

If the board has been guilty of an abuse of discretion not amounting to a neglect to perform its official duties, then the remedy of relatrix is to be attained at the polls. In other words they are accountable under their oaths to the people only, just as are the individual members of this court. As was said in State ex rel. State Publishing Co. v. Smith, supra [23 Mont. 44, 57 Pac. 451]: ''If they have acted arbitrarily, if they have chosen to pervert the functions of their high offices to vile, partisan uses, or to the purposes of favoritism, as is suggested by the allegations in the affidavit [complaint in the instant case], we have no power to restore their consciences, and bring them to a sense of their duty. The forum in which they are to be judged is the minds and consciences of the people, whose servants they are, and who alone can hold them responsible for the manner in which they perform their duties.''

It may well be that the right of the courts to step in when executive and legislative officers abuse their discretion or act

arbitrarily or capriciously would promote good government. But if so, the Constitution should be amended so as to permit the judicial department to take over in such a case. It might also promote better government if a tribunal were provided to which resort might be had in those rare cases where it is claimed that this court has abused its discretion or acted arbitrarily or capriciously, but this too would require a constitutional amendment.

I think the judgment should be reversed and the proceeding dismissed.

MR. JUSTICE ANDERSON, concurs in the foregoing dissenting opinion of Mr. Justice Angstman.